LIDKE v. JACKSON VIBRATORS, INC.

1. APPEAL AND ERROR—FINDINGS OF FACT—SUFFICIENCY OF EVIDENCE.
   An appellate court can only reverse findings of fact of a trial court, sitting as a trier of facts, if it can say that the findings of fact are contrary to a clear preponderance of the evidence.

2. JUDGMENT—FINDINGS OF FACT—SUFFICIENCY OF EVIDENCE—APPEAL AND ERROR.
   A judgment of a trial court, based upon findings of fact made by the trial court as a trier of the facts, cannot be disturbed by an appellate court unless the findings of fact, upon which such judgment is based, are contrary to a clear preponderance of the evidence.

3. SAME—FINDINGS OF FACT—SUFFICIENCY OF EVIDENCE—THIRD-PARTY BENEFICIARY CONTRACT—AGENCY—COURT OF APPEALS.
   Judgment for plaintiff who supplied materials for construction of a barn on property owned by defendant land contract vendor, based upon findings of fact by the trial court in nonjury case that defendant agreed with holders of vendee interest to advance the costs for building the barn and authorized them to purchase materials therefor *held*, proper, and an order of the Court of Appeals reversing said judgment is vacated for entry of an order affirming the same, where the findings of fact, upon which the judgment was based, are

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*

not contrary to a clear preponderance of the evidence, since absent such situation, an appellate court may not disturb the judgment of the trial court.

Appeal from Court of Appeals, Division 3; Lesinski, C. J., and Burns and Holbrook, JJ., reversing Mason, Stephens (Rupert B.), J. Submitted March 9, 1967. (Calendar No. 9, Docket No. 51,383.) Decided June 6, 1967.

1 Mich App 537, reversed.

Declaration by Cloyce Lidke, doing business as Lidke's Feed Mill, against Jackson Vibrators, Inc., an Illinois corporation, and Harris E. Cregg and Frances E. Cregg for materials supplied to rebuild farm buildings destroyed by fire. Judgment for plaintiff. Defendant Jackson Vibrators, Inc., appealed. Judgment reversed by Court of Appeals. Plaintiff appeals. Reversed and remanded for entry of order affirming trial court.

*Lidke & Sanford* (*Allan S. Lidke,* of counsel), and *Graham & Johnson* (*G. Thomas Johnson,* of counsel), for plaintiff.

*Warner, Norcross & Judd* (*Charles C. Lundstrom,* of counsel), for defendant Jackson Vibrators, Inc.

T. M. KAVANAGH, J. Plaintiff-appellant is here on leave granted from a reversal by the Court of Appeals[1] of a judgment rendered by the trial court, sitting without a jury, in favor of plaintiff-appellant Lidke for building supplies furnished in the sum of $5,018.34 with interest, together with taxable costs.

. The facts of the case indicate that Jackson Vibrators, Inc., hereinafter referred to as "Jackson,"

---

[1] 1 Mich App 537.

owned certain real estate located in Mason county, Michigan. On November 13, 1958, Jackson sold the the premises to one Robert Rabe under land contract for the sum of $35,000. Subsequently, on April 9, 1960, Rabe assigned his vendee's interest in the land contract to Harris E. Cregg and Frances E. Cregg, husband and wife, defendants-appellees, hereinafter called "Creggs." The written land contract dated November 13, 1958, provided the following:

"3. Said second party [purchaser] shall keep all buildings now on or that may hereafter be placed on said premises insured in the name of and in manner and amount and by insurers approved by first party [seller], and leave the policy with first party, and in case of loss the insurance proceeds shall be used for rebuilding, repairing and replacing the leased premises, unless, by mutual agreement, paid to first party and endorsed on this contract to the extent of the amount unpaid thereon and the balance, if any, shall belong and be paid to second party."

At the time of the original land contract and the assignment to Creggs, Jackson had the premises insured against loss by fire for the period of November 26, 1957, through November 26, 1960. The premium on this insurance was fully paid.

On September 26, 1960, a barn and other buildings located on the premises were destroyed by fire. The aggregate amount of the insurance covering the buildings in question under the policy was $31,300. After the fire the Creggs had a conference with Jackson and the Creggs were instructed by one Mr. Pfleiderer, a trustee of Jackson, to go ahead and rebuild the barn. He informed the Creggs that one Morgan Hall and one Miss McDonald would be their bosses and oversee the building; and that the said Mr. Hall and Miss McDonald would take charge of

the accounting and would keep the finances straight. Morgan Hall was the secretary of Jackson and Miss McDonald was the treasurer.

On the basis of these instructions, the Creggs proceeded to order materials from Lidke and to contract for labor to rebuild the barn. Said materials were delivered by the plaintiff from time to time between the dates October 24, 1960, and January 18, 1961. During this rebuilding, Mr. Hall made periodic checks on the progress of the new building and such information concerning the progress was passed on to the trustees of Jackson. All bills were turned over to Miss McDonald as treasurer of Jackson. Near the end of October 1960 Jackson was advised by the insurance carrier that it denied liability under the policy.

Jackson denied liability to Lidke. Plaintiff filed suit against the defendants Jackson and Creggs for materials furnished in rebuilding the barn upon Creggs' order.

It is the plaintiff's claim that he is a third-party beneficiary of the contract between the defendants under the statute and that said defendants have refused to pay for said materials. CL 1948, § 691.543 (Stat Ann 1953 Rev § 26.1233)[2] provides:

"The rights of a person for whose benefit a promise has been made, as hereinbefore defined, shall be deemed to have become vested, subject always to such express or implied conditions, limitations, or infirmities of the contract to which the rights of the promisee or the promise are subject, without any act or knowledge on his part, the moment the promise becomes legally binding on the promisor, unless there is some stipulation, agreement or understanding in the contract to the contrary."

[2] See, currently, CLS 1961, § 600.1405 (Stat Ann 1962 Rev § 27A-.1405).

Under count 2 of his declaration plaintiff alleges that defendant Jackson, believing itself responsible for the cost of reconstructing the barn, created its vendee Harris E. Cregg its agent for the purpose of contracting for the reconstruction of said barn. As such agent Creggs contracted for materials to the extent of $5,018.34 and although defendant Jackson paid the labor costs involved in reconstruction, it has refused to pay this plaintiff for materials.

Jackson denied the existence of an unconditional third-party beneficiary contract, asserting that its promise was conditioned upon the receipt of the insurance proceeds, and it denied that the Creggs were acting as its agent.

After hearing the conflicting testimony and examining the exhibits and evidence, the trial court, in a written opinion filed March 10, 1964, made specific findings of fact as follows:

"The proofs clearly preponderated that shortly after the fire, the Creggs met with officials of the company, where it was decided to build a new barn. The cost of reconstructing the original building was prohibitive and it was decided to construct according to plans furnished by the county and State agricultural extension service. Since the Creggs were of the opinion the cost could be reduced by hiring labor and purchasing materials locally, they were authorized by the company to proceed with the building, the only stipulation being that the cost should not exceed the proceeds from the insurance. The balance of the proceeds, if any, were to be credited to the Creggs on their contract. At the meeting, one Mr. Morgan D. Hall and Mary E. Mc-Donald, officials of the company, were appointed as 'bosses' to supervise the construction and to represent the company on problems connected therewith. These officials met with the Creggs from time to time as the building progressed and on several

occasions Mr. Hall inspected the progress at the farm.   *   *   *

"The plaintiff testified that he had done business with defendant Jackson for many years; that he knew of the sale to Rabe and of the assignment to Creggs. He also testified that he was informed of the meeting between the defendants and of the decisions there reached; that defendant Jackson knew from the Creggs he was furnishing the materials and that he also visited with Mr. Hall on two different occasions, once during construction and once after the building was completed, and was never advised or told he would not be paid; that he looked to the company for payment not only because of the agreement between the defendants, but also because he knew the Creggs were financially unable to rebuild from their own resources. He understood the Creggs were acting as defendant's agents and was promised by them that his bill would be paid.

"Defendant Jackson paid the bills for the labor when presented by the Creggs, but took from them two promissory notes, being defendant Jackson's exhibits 1 and 2. The notes represented the exact sum paid for the labor.

"In view of the manner in which Jackson handled the insurance on the buildings, it is presumed to have waived the formal requirement provided in the land contract. The company was obviously satisfied with the policy which it had and merely billed the vendees for the premiums. Had the insurance company paid for the loss, the materials and labor would have been paid for from the proceeds and the promissory notes would not have been taken, nor would this suit have been instituted. In this connection, it must be remembered that, at the time of the meeting, between the defendants, there was no suggestion that the insurance company would not pay for the loss. It was not a question of whether or not the loss would be paid but, rather, *how much* the proceeds would be. It was not learned, until the con-

struction was nearly completed, that liability on the policy was denied. Accordingly, the defendant's contention that the labor and material bills would be paid only in the event the insurance company stood the loss is entirely without merit and is not substantiated by the evidence."

Following a discussion of the law and several cases, the trial court concluded that plaintiff was entitled to maintain a cause of action under the third-party beneficiary statute. The court then disposed of the agency question by discussing the testimony with respect to it and stated:

"Defendant Creggs contend they are not liable to the plaintiff since they were only acting as the agent of defendant company in rebuilding the barn."

The court concluded:

"This court is of the opinion there is much weight in their position and that the defendant company does have a contractual obligation to either rebuild the barn, or to reduce the sum due on the contract by the extent of the loss in the event its insurance company does not pay."

The court then proceeded to render judgment against defendant Jackson in the amount hereinbefore indicated.

The Court of Appeals, disregarding the trial court's specific finding of fact of an agency relationship between the Creggs and defendant Jackson and the specific finding of fact that defendant Jackson did not condition its promise to pay for construction upon receipt of the insurance proceeds, reversed the trial court.

The Court of Appeals stated in its opinion (p 540):

"Upon a review of the entire testimony, it does appear that there was a firm understanding and

agreement between Jackson and the Creggs to the effect that the Creggs were authorized to go ahead and contract for labor and materials to rebuild the barn; that Jackson would pay these bills from the insurance proceeds."

As to the agency question, it said (pp 542, 543):

"The record herein affirmatively established by the plaintiff's witnesses that Jackson made no representation to the plaintiff, and that the plaintiff relied on the statements of an alleged agent to establish his authority. It is the finding of this Court that plaintiff failed to establish apparent authority or implied agency to hold Jackson liable for the acts of an alleged agent."

An appellate court can only reverse findings of fact of the trial court, sitting as a trier of the facts, if it can say that the findings of fact are contrary to a clear preponderance of the evidence. See *Kevreson* v. *Michigan Consolidated Gas Company*, 374 Mich 465, 474. Absent such a situation, it cannot disturb the judgment of the trial court.

We cannot say, looking at this record, that the findings of fact are against the clear preponderance of the evidence.

The order of the Court of Appeals reversing the trial court is vacated. The case is remanded to the Court of Appeals with directions to enter its order affirming the trial court. Plaintiff appellant shall have costs.

DETHMERS, C. J., and KELLY, BLACK, SOURIS, O'HARA, ADAMS, and BRENNAN, JJ., concurred.