GUNN v. EDISON SAULT ELECTRIC COMPANY

NEGLIGENCE—POWER TRANSMISSION LINES—ELECTRICITY—RISK OF
HARM—AIRPLANES.

> The law does not require those maintaining power transmission
> lines to anticipate every possible fortuitous circumstance that
> might cause injurious contacts with them; therefore, in an
> action for the death of a passenger in an airplane resulting
> from the collision of the airplane with certain electric wires,
> a judgment of no cause of action in a nonjury trial in which
> the owner of the power line was charged with common-law
> negligence in failing to have the line and poles marked with
> either paint or some type of reflector was not clearly erroneous
> and contrary to the preponderance of the evidence where the
> owner of the power line had no reason to foresee an un-
> reasonable risk of harm in the area where the collision occurred,
> which was not designated as an official aircraft approach.

Appeal from Chippewa, George S. Baldwin, J.
Submitted Division 3 April 8, 1970, at Lansing.
(Docket No. 6,701.)   Decided May 26, 1970.

Complaint by Evelyn Gunn, administratrix of the
estate of Robert P. Gunn, against Edison Sault Elec-
tric Company for negligent maintenance of an elec-
tric power line.   Judgment for defendant.   Plaintiff
appeals.   Affirmed.

*T. George Sternberg,* for plaintiff.

*Sugar, Schwartz, Silver, Schwartz & Tyler,* for
defendant.

REFERENCE FOR POINTS IN HEADNOTE
8 Am Jur 2d, Aviation §§ 49, 80.

Before: McGregor, P. J., and Danhof and Larnard,* JJ.

Danhof, J. Plaintiff appeals from a judgment of no cause of action entered by the trial judge after a nonjury trial. The matter was fully and completely tried and the trial judge filed an extensive written opinion setting forth his findings of fact and conclusions of law. Thus, the scope of our review is whether the findings of the trial court were clearly erroneous and contrary to the preponderance of the evidence, GCR 1963, 517.1; *Kevreson v. Michigan Consolidated Gas Company* (1965), 374 Mich 465; *Lidke v. Jackson Vibrators, Inc.* (1967), 379 Mich 294; *Adams Sheet Metal Corporation v. City of Royal Oak* (1968), 11 Mich App 657.

The facts from our examination of the record are clearly supported by a preponderance of the evidence and are as follows:

On May 15, 1961 plaintiff's decedent died as a result of a collision of an airplane, in which he was a passenger, with certain electric wires owned by the defendant stretching across a part of the St. Mary's river known as the Little Rapids Cut. The electric wires ran from the mainland near Sault Ste. Marie, Michigan to Steere's Island. On or about 4:30 p.m. on May 15, 1961, plaintiff's decedent was in the rear seat of a Piper aircraft, owned and piloted by Robert J. Haines, which was returning to Michigan from a trip to Canada. Both occupants of the aircraft died as a result of the collision. The aircraft was attempting a landing on the Little Rapids Cut of the St. Mary's river in order to dock at the Municipal Marina where arrangements had been made to clear the United States customs. There were two areas used by pontooned aircraft to clear customs, Welch's

---

* Circuit Judge, sitting on the Court of Appeals by assignment.

Boat Dock and the Municipal Marina. Neither of
these was an officially designated sea drome and each
area was used approximately 50 per cent of the time.
The aircraft in which the decedent was a passenger
approached the Cut from the north intending to land
in a southerly direction since the winds on the day
in question were from the southwest. It is noted that
this was not the generally prevailing winds in the
area, and that only 20 per cent of the aircraft using
the Municipal Marina landed from the north to the
south. The aircraft in question first made a right
turn around an island known as Rotary Island and
then banked to the left between Rotary Island and
Steere's Island to go into the channel which was west
of Steere's Island when it collided with the wires of
the defendant. The wires ran over the water ap-
proximately 120 yards and were connected to poles
both on the mainland and Steere's Island and were
approximately 38 feet over the water. The accident
occurred approximately 4000 feet north of the
Marina. Plaintiff's decedent's body was recovered
from the aircraft and an autopsy report indicated
that he died from drowning. Approximately ½ mile
south of the wires owned by the defendant and just
north of the Marina was another power line cross-
ing the Cut which was owned by the Cloverland REA.
This line was connected to poles on both the mainland
and an island south of Steere's Island known as
Sugar Island and were approximately 90 feet high
at that point. The day in question was clear, cool,
with winds at approximately 15 to 25 miles per hour
with gusts in excess of that. The power line owned
by the defendant had been in existence since 1911.
It provided electric power to three customers on
Steere's Island which the defendant was obligated
to provide with electric service. There were no
markers on the poles of the defendant, nor on the

power line. The Little Rapids Cut was not designated as an official aircraft approach and at the time of the accident Welch's Dock was designated as an emergency sea drome. Those aircraft which did approach from the north to land into a southwesterly wind normally flew over the golf course which was to the west of the Cut and on the mainland and landed near the Marina or south of the Marina. Neither the line of the defendant nor the REA line were designated by federal or state officials as aeronautical hazards.

The question presented to us on appeal is whether the defendant was guilty of common-law negligence in failing to have the line and poles marked with either paint or some type of reflector. Plaintiff abandoned on appeal any liability predicated upon either federal or state statutes. The trial court found no negligence in the existence of the power line itself; the line was not in an approach pattern and the defendant was not obligated to foresee every fortuitous circumstance that might occur. We agree with this finding. See *Dees* v. *L. F. Largess Company* (1965), 1 Mich App 421. The liability of the defendant is set forth in 26 Am Jur 2d, § 43, p 252 as follows:

"Conversely, the law is complied with when an electric or telephone company or others engaged in the transmission or use of electricity provide such a protection as will safely guard against any contingency that is reasonably to be anticipated. The extent of the duty or standard of care is measured in the terms of foreseeability of injury from the situation created. There is no duty to safeguard against occurrences that cannot be reasonably expected or contemplated. A failure to anticipate and guard against a happening which would not have arisen but for exceptional or unusual circumstances is not negligence, nor does the law require those

maintaining power transmission lines to anticipate every possible fortuitous circumstance that might cause injurious contacts with those lines."

The evidence clearly showed that none of the witnesses who testified, either on behalf of the plaintiff or defendant, and who were licensed pilots and who had landed at the Marina had ever landed or attempted to land in the manner in which the aircraft in question attempted to land. The one eyewitness who was on the golf course mentioned above indicated that he had seen many planes land but that none of them had approached in the manner of the decedent's aircraft, but that all had landed much farther south beyond the power line of the REA. As we said in *Dees* v. *L. F. Largess Company, supra,* p 427,

"The law does not require those maintaining power transmission lines to anticipate every possible fortuitous circumstance that might cause injurious contacts with those power lines."

The trial court found, and we agree, that any contributory negligence on the part of the pilot is not imputable to the plaintiff's decedent, but the defendant was not guilty of common-law negligence because it had no reason to foresee an unreasonable risk of harm in this non-approach area.

Affirmed, costs to the defendant.

All concurred.