899 F.2d 999
 Chris William SHUTE; Mid-Valley Helicopters, Inc., an
Oregon corporation, Plaintiff/Appellee,
v.
MOON LAKE ELECTRIC ASSOCIATION, INC., a Utah corporation,
Defendant/Third-Party-Plaintiff,
and
MOUNTAIN STATES TELEPHONE & TELEGRAPH, d/b/a Mountain Bell,
a Colorado corporation,
Defendant/Third-Party-Plaintiff/Appellant,
v.
UNITED STATES of America, Third-Party-Defendant.
 No. 86-2668.
 United States Court of Appeals,
Tenth Circuit.
 March 30, 1990.
Rehearing Denied April 30, 1990.
 
 Floyd A. Jensen of Mountain States Tel. and Tel. Co., Salt Lake City, Utah, for defendant-appellant.
 H. James Clegg of Snow, Christensen & Martineau, Salt Lake City, Utah (David G. Williams of Snow, Christensen & Martineau, Salt Lake City, Utah, and Craig S. Cook, Salt Lake City, Utah, with him on the brief), for plaintiffs-appellees.
 Before McKAY, McWILLIAMS and BRORBY, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 This diversity case comes to us on appeal from a jury verdict and judgment in favor of plaintiffs, Chris William Shute and Mid-Valley Helicopters, Inc., and against defendant Mountain States Telephone and Telegraph Company as a result of an accident in which plaintiffs' helicopter collided with power lines adjacent to Mountain States' telephone wires.
 
 I. Facts
 
 2
 In June 1982, Mid-Valley leased a helicopter to the National Forest Service and furnished two pilots, including Mr. Shute, to operate the helicopter. In late July 1982, the Forest Service obtained permission to use the helicopter to assist in locating squaw fish that previously had been implanted into the Green River in eastern Utah.
 
 
 3
 Mr. Shute began the survey by overflying the river in a southwesterly direction to a point on the river several miles south of the eventual accident site. During this initial overflight, Mr. Shute maintained an altitude of approximately 500 feet and observed several instances of utility wires crossing the river. In order to conduct the survey, Mr. Shute flew northward along the center of the river at approximately twenty to fifty feet above the surface and at the relatively slow speed of twenty miles per hour. Mr. Shute successfully overflew several utility wire crossings before reaching the accident site. Testimony indicated that the survey flight took place on a bright, sunny day and that visibility was excellent.
 
 
 4
 The accident site involved five visible utility poles and two separate sets of wires--one set of electrical transmission wires owned by Moon Lake Electric Association and one set of telephone wires owned by Mountain States (see diagram at Appendix 1 attached). Of the five poles, three were located on the west side of the river and the other two stood on the east. From Mr. Shute's left (west) to his right (east), the first two visible poles (pole nos. 1 and 2) belonged to Moon Lake. The next two poles (pole nos. 3 and 4), which were next to either bank of the river, belonged to Mountain States. The last and easternmost pole (pole no. 5) belonged to Moon Lake.
 
 
 5
 Moon Lake installed its 3/8-inch thick power lines in 1952 on its own poles, two of which (pole nos. 2 and 5) stood 1007 feet apart on opposite sides of the Green River. In 1964, pursuant to a joint pole attachment agreement with Moon Lake, Mountain States attached its telephone lines to Moon Lake's poles below the power lines. However, because the tensile strength of the 1/10-inch thick telephone wires was not great enough to span the 1007 feet between Moon Lake's poles, Mountain States installed two of its own poles (pole nos. 3 and 4), one on each side of the river, creating a shorter span for the telephone lines. The telephone lines thus spanned the river approximately thirty feet below the Moon Lake power lines. The Moon Lake power lines were not attached to the new poles, but continued to span the 1007-foot distance between Moon Lake's poles.
 
 
 6
 This configuration remained in place for eighteen years, until the accident in 1982. There had been no previous incidence of aircraft colliding with any of the wires. The accident site is located in a remote area of Utah that is not within any regularly traveled flight path and is ten miles from the nearest air strip.
 
 
 7
 Mr. Shute testified that as the helicopter approached the accident site, he was able to observe Mountain States telephone wires which were 1/10-inch thick and had taken on a dark color. He also testified that he observed each of the poles between which the power lines and telephone wires were suspended. However, Mr. Shute testified that he was unable to see the silver colored Moon Lake power lines that were suspended 30 feet above the telephone lines and not attached to the shorter Mountain States poles (3 and 4). As he approached the line crossing, Mr. Shute observed the five visible poles and assumed that both sets of wires were attached to all the poles. Accordingly, Mr. Shute assumed that by climbing to an elevation high enough to clear the two poles closest to the river (Mountain States poles 3 and 4 to which only the telephone lines were attached), he would safely clear all wires. The helicopter gained sufficient altitude that it cleared the telephone wires, but it struck the Moon Lake power lines that were suspended above the telephone lines. The collision caused the power lines to act as a tether around the helicopter's rotor mast and the helicopter crashed, injuring Mr. Shute and destroying the helicopter.
 
 
 8
 Plaintiffs brought this action against Mountain States and Moon Lake claiming that the two were negligent in the design and maintenance of the wire configuration at the accident site. The defendants argued that the accident was due to Mr. Shute's negligence in piloting the helicopter. The jury returned a verdict apportioning negligence to the various parties as follows: Mr. Shute 8%, Moon Lake 32%, and Mountain States 60%. Prior to the entry of judgment on the verdict, Moon Lake settled with the plaintiffs and is not involved in this appeal.
 
 
 9
 Mountain States now argues that the district court erred in not awarding Mountain States judgment as a matter of law because Mountain States owed no duty to the plaintiffs either in the construction or maintenance of the wire configuration. Mountain States also challenges the judgment on the ground that there was not sufficient evidence for the jury's verdict and on the further ground that the trial court erred in giving its instructions to the jury on the issue of negligence. For the reasons discussed below, we affirm the judgment of the district court.
 
 II. Duty
 
 10
 Mountain States based several motions, including motions for summary judgment and for directed verdict, primarily on the claim that it owed no duty to plaintiffs and thus cannot be held liable for negligence. In determining whether the district court was correct in denying the motions, we must decide whether Mountain States owed a duty to plaintiff.
 
 
 11
 Because federal jurisdiction here is based on diversity under 28 U.S.C. Sec. 1332 (1982), we must apply the substantive law of the state in which the accident occurred, in this case Utah law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Rigby v. Beech Aircraft Co., 548 F.2d 288, 290 (10th Cir.1977). Applying Utah law, we agree with Mountain States' assertion that in order to recover based on negligence, a plaintiff must show that the defendant owed a duty to that plaintiff. See Weber v. Springville City, 725 P.2d 1360, 1363 (Utah 1986). The question of whether a duty exists is a question of law for the court to decide. Id. Accordingly, we review de novo the duty issue. See In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1266 (10th Cir.1988).
 
 
 12
 In their briefs, the parties argue at length as to the proper duty analysis and as to what factors must be considered in determining whether a duty was owed. Despite this lengthy discussion and our own exhaustive research, we can identify no clear statement as to which factors must be considered under Utah law. Likewise, we find no cases from Utah with sufficient factual similarity to help us decide the duty issue involved here. We are thus left to decide whether in this rather unique case plaintiffs should be protected from the type of hazard created by the wires. In so doing, we have little more than policy to guide us in the absence of specific precedent. See Thode, Tort Analysis: Duty-Risk v. Proximate Cause and the Rational Allocation of Functions Between Judge and Jury, 1977 Utah L.Rev. 1, 26-28. Indeed, we find the following description of duty particularly meaningful:
 
 
 13
 The statement that there is or is not a duty begs the essential question--whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. It is therefore not surprising to find that the problem of duty is as broad as the whole law of negligence, and that no universal test for it ever has been formulated. It is a shorthand statement of a conclusion, rather than an aid to analysis in itself.... [I]t should be recognized that "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.
 
 
 14
 W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser & Keeton on the Law of Torts 357-58 (5th ed. 1984).
 
 
 15
 Although we recognize that the duty analysis described above lacks structure and certainty, we nevertheless conclude that it is our task simply to decide based on the best factors we can identify whether Mountain States owed any duty. After considering carefully the evidence in the record and the parties' arguments, we hold that Mountain States did owe a duty of reasonable care to plaintiffs. The district court did not err when it denied Mountain States' motions and allowed the jury to decide the issue of negligence.
 
 
 16
 It is important to note that our holding is heavily influenced and limited by the unique facts and circumstances of this case. Undisputed evidence in the record shows that pilots who encounter power and telephone lines will use the height of the supporting poles as a measure of how high they must fly in order safely to clear the lines. Because pilots are trained to observe poles instead of the less visible wires, the unique wire-pole configuration used by Mountain States created a greater hazard to low-flying aircraft approaching the lines than a normal wire configuration. If a normal configuration had been used, approaching aircraft would have had a much lower probability of striking the power lines involved here. Consequently, we conclude that when a wire configuration like the one used by Mountain States is installed, the owner(s) of the wires owes a duty of reasonable care to any aircraft pilots who may encounter the wires.[1] The question of whether the owner has breached that duty is therefore a proper question for the trier of fact.
 
 
 17
 Mountain States urges us to adopt the analysis of several other courts that have been confronted with the duty issue in wire strike cases. We acknowledge that a number of cases cited by Mountain States stand either for the proposition that no duty existed or that the defendants breached no duty when aircraft collided with wires. See Lea v. Baumann Surgical Supplies, Inc., 321 So.2d 844 (La.Ct.App.1976); Bayman v. Clearwater Power Co., 15 Wash.App. 566, 550 P.2d 554 (1976); Gunn v. Edison Sault Elec. Co., 24 Mich.App. 43, 179 N.W.2d 680 (1970); Columbia Helicopters, Inc. v. United States, 314 F.Supp. 946 (D.Or.1969); Walker v. Texas Elec. Service Co., 499 S.W.2d 20 (Tex.Civ.App.1973). We also note, however, that several courts have reached the opposite conclusion on the duty issue and have allowed the triers of fact to consider the negligence issue. See, e.g., Smith v. Tennessee Valley Auth., 699 F.2d 1043 (11th Cir.1983); McCauley v. United States, 470 F.2d 137 (9th Cir.1972); United States v. Washington, 351 F.2d 913 (9th Cir.1965); Weber v. Southwestern Bell Telephone Co., 209 Kan. 273, 497 P.2d 118 (1972); El Paso Natural Gas Co. v. United States, 343 F.2d 145 (9th Cir.1965); Mills v. Orcas Power & Light Co., 56 Wash.2d 807, 355 P.2d 781 (1960); Yoffee v. Pennsylvania Power & Light Co., 385 Pa. 520, 123 A.2d 636 (1956). Our holding relies on none of these cases because each of them is distinguishable from the case before us. No case that we have found either in the parties' briefs or through our own research has involved a wire configuration like the one involved here. For this reason, we are not persuaded to follow the analysis used in previous wire strike cases.
 
 
 18
 In its brief, Mountain States argues at length that it can owe no duty where the type of harm suffered by a plaintiff was not a foreseeable consequence of Mountain States' actions. Mountain States also makes much of the fact that the wires were located at low elevation in a sparsely populated area far from the nearest airport. First we note that the Utah courts have not adequately outlined the elements required to find a duty. Specifically, we have found no statement by a Utah court that the duty question depends on foreseeability alone. Nevertheless, we now proceed to analyze the foreseeability issue on the assumption that the Utah courts may have implicitly adopted the foreseeability requirement; or if faced directly with this issue the Utah courts would adopt the apparent majority view that duty requires foreseeability. See W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts Sec. 43 at 280 (5th ed. 1984); Annotation, Foreseeability as an Element of Negligence and Proximate Cause, 100 A.L.R.2d 942, 945 (1965).
 
 
 19
 We are not persuaded that Mr. Shute's accident was wholly unforeseeable. Aircraft are now used at widely varying altitudes for numerous purposes, such as wildlife and geological surveying, scouting, and recreational sightseeing.[2] We cannot say that it was unforeseeable that at some time a pilot would undertake a low-level flight near the wires. As long as some air traffic was likely to encounter the wires, it was foreseeable that a pilot would be "fooled" by the wire-pole configuration and strike the power lines.
 
 
 20
 Mountain States argues further that if a duty is imposed in this case, the burden of guarding against similar accidents will be enormous. We agree that the burden involved in eliminating a risk is relevant to the duty issue. Indeed, in one of its rare statements on the duty issue, the Utah Supreme Court stated that: "Whether the law imposes a duty does not depend upon foreseeability alone. The likelihood of injury, the magnitude of the burden of guarding against it and the consequences of placing that burden upon defendant, must also be taken into account."[3] Little v. Utah State Div. of Family Servs., 667 P.2d 49, 54-55 (Utah 1983) (quoting Lance v. Senior, 36 Ill.2d 516, 224 N.E.2d 231 (1967)). We do not agree, however, that our holding imposes on Mountain States a burden that outweighs the risk involved in this case. Despite Mountain States' claim that a finding of duty makes it an insurer of the safety of all its lines, under our holding Mountain States' burden is limited to marking lines whose wire-pole configurations are similar to those involved in this case. Testimony in the record shows that there are few instances in which this type of configuration is used. Further, the cost of marking lines in those few places is small compared to the gravity of the harm caused when a collision occurs. It is our judgment, therefore, that although the probability of this type of accident is low, the overall risk (i.e., the probability multiplied by the gravity of harm) outweighs the limited burden imposed by our holding. Consequently, we are not persuaded by Mountain States' claim that the burden of guarding against this type of accident is too great.
 
 III. Sufficiency of Evidence
 
 21
 Mountain States next challenges the jury's verdict claiming that there was not sufficient evidence to support the finding of negligence. Here, our review is "limited to the inquiry as to whether the record contains substantial evidence to support the jury's or court's conclusion, viewing the evidence in the light most favorable to the prevailing party." Kitchens v. Bryan County Nat'l Bank, 825 F.2d 248, 251 (10th Cir.1987). Moreover, the jury "has the exclusive function of appraising credibility, determining the weight to be given to the testimony, drawing inferences from the facts established, resolving conflicts in the evidence, and reaching ultimate conclusions of fact." Id. at 251.
 
 
 22
 Applying these principles to the present case, we conclude that sufficient evidence supports the jury's verdict. Viewing the evidence in the light most favorable to plaintiffs we note that there was testimony showing that pilots avoid wires by observing and overflying poles. The record also shows that relatively inexpensive markers can be used where wires present an unusually high risk to aviators. Mountain States never requested that Moon Lake attach any such markers to its lines. Finally, the record shows that although low-level flights were uncommon in the area around the accident site, flights had taken place on occasion. Based on this information, the jury could reasonably find Mountain States negligent; and the verdict easily survives Mountain States' challenge.
 
 IV. Jury Instructions
 
 23
 As a final matter, we consider Mountain States' claim that the court improperly instructed the jury regarding the issue of negligence. When we examine a challenge to jury instructions, we review the record as a whole to determine whether the instructions state the law that governs and provide the jury with an ample understanding of the issues and the standards applicable. Big Horn Coal Co. v. Commonwealth Edison Co., 852 F.2d 1259, 1271 (10th Cir.1988). We consider the court's instructions as a whole to determine not whether the instructions were flawless in every particular but whether the jury was misled in any way and whether it had an understanding of the issues and its duty to decide those issues. Id. Accordingly, our standard of review is as follows: "[A]n error in jury instructions will mandate reversal of a judgment only if the error is determined to have been prejudicial, based on a review of the record as a whole." Id. at 1271 n. 19 (quoting Durflinger v. Artiles, 727 F.2d 888, 895 (10th Cir.1984)).
 
 
 24
 Mountain States complains that the court misled the jury by instructing it to use what amounted to a strict liability standard instead of a negligence standard by stating:
 
 
 25
 If you find that at the time of its construction, the power line erected by Moon Lake Electric Company was reasonably safe to aircraft, but that after the additional poles and lines were added by [Mountain States], an unsafe and misleading hazard was presented to aircraft, you must decide which of the defendants was negligent and, if both, apportion it to them.
 
 
 26
 Record, vol. 2, at 1426. Mountain States advances the same strict liability argument with respect to the court's statement that "defendant [Mountain States] has a duty to construct its facilities so that they are not dangerous to aircraft, reasonably to be expected in the area." Id. at 1427. Specifically, Mountain States alerts us to the court's failure to mention that a risk must be unreasonable in order for negligence to exist. Having read the record as a whole, we find that Mountain States' argument is based on a distorted reading of the instructions. Immediately preceding the above-quoted passages, the court stated:
 
 
 27
 To find that negligence was committed by any defendant, you must first find that the injury incurred was reasonably foreseeable. As related to this case, in order to find negligence on the part of defendants, Moon Lake and/or [Mountain States], you must find that a reasonable or prudent person similarly situated in circumstances would have reasonably anticipated that the utility wires as constructed and maintained in the particular location, posed an unreasonable threat to aircraft.
 
 
 28
 Failure to anticipate and guard against a happening which would not have arisen but for exceptional or highly unusual circumstances is not negligence unless you find that such happening was reasonably foreseeable and reasonably could have been expected or contemplated.
 
 
 29
 The degree of care required is to reasonably safeguard against contacts which according to human knowledge and experience are reasonably foreseeable.
 
 
 30
 You are instructed that Moon Lake and [Mountain States] are required to exercise reasonable care and precaution in installing and maintaining transmission lines. This duty extends to persons whom those defendants should reasonably anticipate might be present and exposed to danger at that location.
 
 
 31
 The defendants are not insurers of the safety of their lines.
 
 
 32
 Id. at 1425-26. Later in the instructions, the court went on to state:
 
 
 33
 A person cannot be held negligent for failing to respond to the existence of air traffic, or changed circumstances such as increase or fluctuations in aircraft activity unless he actually knew or reasonably should have known about such air traffic. Thus, unless you find that defendants, or either of them actually knew or reasonably should have known of the air traffic in the vicinity of the accident site subsequent to the construction of the poles and wires, you cannot hold them negligent for failing to respond to such.
 
 
 34
 Id. at 1428.
 
 
 35
 Considering the instructions and the record as a whole, we conclude that Mountain States was not prejudiced by the statements about which it complains. In the context of the entire set of instructions, we decline even to say that an error was made.
 
 V. Conclusion
 
 36
 We hold that in the unique circumstances of this case, Mountain States owed a duty of reasonable care to plaintiffs. Thus, the district court did not err when it submitted the case to the jury on the issue of negligence. We hold further that sufficient evidence supported the jury's verdict. Finally, we reject Mountain States' challenge to the court's jury instructions because, taken as a whole, the instructions adequately informed the jury as to its charge and any flaws contained in the instructions fell short of prejudicial error.
 
 
 37
 AFFIRMED.
 
 APPENDIX 1
 
 38
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 [1]
 The facts of this case do not require us to decide whether Mountain States would have owed any duty to the plaintiff if Mountain States had used a normal wire configuration
 
 
 [2]
 Mountain States argues that foreseeability must be judged according to conditions existing in 1964 when the configuration came to be. In response, we simply note that Mountain States had a duty to maintain its lines in reasonably safe condition. Cf. Brigham v. Moon Lake Elec. Ass'n, 24 Utah 2d 292, 470 P.2d 393, 395 (Utah 1970). This duty makes relevant any foreseeable consequences caused by the configuration in the years after 1964
 
 
 [3]
 This type of risk-benefit analysis was first applied by the Second Circuit in United States v. Carroll Towing Co., 159 F.2d 169, 173 (2d Cir.1947) (Hand, J.). See also W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts 173 (5th ed. 1984); Restatement (Second) of Torts Secs. 291-93 (1965). Although this analysis has been used primarily in determining whether conduct was unreasonable (the negligence issue), we interpret the Utah Supreme Court's statement in Little as an application of the risk-benefit formula in determining the duty issue