953 F.2d 1391
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 The CADLE COMPANY, II, INC., Plaintiff-Appellant,
v.
Charles R. CHASTEN; Billy M. Carter; Jimmy J. Holmes;
Lendell D. Roberts, Defendants-Appellees.
 No. 91-6165.
 United States Court of Appeals, Tenth Circuit.
 Jan. 23, 1992.
 
 Before JOHN P. MOORE, TACHA and BRORBY, Circuit Judges.
 ORDER AND JUDGMENT*
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiff-appellant, The Cadle Company II, Inc. (Cadle), appeals from a judgment for Defendants-appellees (Guarantors) following a jury trial on its suit for collection under several guaranty agreements. Our jurisdiction over this matter arises from 28 U.S.C. § 1291. The district court's jurisdiction was based on diversity under 28 U.S.C. § 1332. Oklahoma law applies.
 
 
 3
 Most of the pertinent facts are undisputed. Guarantors executed separate guaranty agreements with the Oklahoma National Bank and Trust, guarantying payment of "all indebtedness" from Dayspring Church, Inc. to the bank. When Dayspring defaulted on the underlying promissory note, the bank's successor in interest to Dayspring's note, First Interstate Bank, began negotiations with Dayspring. At that time, Dayspring's indebtedness was approximately $398,000.00, plus interest. Ultimately, First Interstate's successor,[1] CAMCO, reached a settlement agreement with Dayspring.
 
 
 4
 The settlement agreement was never reduced to writing. Dayspring paid $159,500.00, and the FDIC released its security interest in the real property. After receiving Dayspring's payment, the FDIC advised Dayspring that it considered the settlement agreement to release only the obligations of Dayspring Church, Inc. Shortly thereafter, CAMCO sent demand letters to Guarantors, requesting payment of the balance of Dayspring's indebtedness. The FDIC subsequently sold its interest in the Dayspring note and guaranty agreements to Cadle, which brought suit against Guarantors. The only relevant factual dispute in the record concerns whether the FDIC or CAMCO knew about the guaranty agreements during the negotiations with Dayspring.
 
 
 5
 The suit went to trial before a jury. In defense to Cadle's claims under the guaranty agreements, Guarantors contended that the settlement agreement between CAMCO and Dayspring constituted an accord and satisfaction, both of Dayspring's debt and their liability as guarantors. The district court found that the settlement agreement, as represented by the correspondence between the parties, was ambiguous with regard to the parties' intent as to Guarantors' liability, and submitted the accord and satisfaction defense to the jury. The jury, after three sessions of deliberation, returned a verdict for Guarantors.
 
 
 6
 Cadle presents four issues on appeal: 1) did the district court err in denying Cadle's motion for directed verdict; 2) did the district court err in sending the issue of accord and satisfaction to the jury; 3) was the jury's finding of accord and satisfaction clearly erroneous; and 4) did the district court err in denying Cadle's pretrial Motion in Limine? For the reasons set forth below, we reject Cadle's arguments and affirm.
 
 
 7
 Cadle moved for directed verdict following the close of all evidence, and the district court denied the motion. On appeal, Cadle charges error in this denial, based on the broad language of the guaranty agreements and the lack of any reference to the guaranty agreements or Guarantors in the correspondence evidencing the settlement agreement between Dayspring and CAMCO. We review the district court's denial of a motion for directed verdict de novo, Riggs v. Scrivner, Inc., 927 F.2d 1146, 1149 (10th Cir.), cert. denied, 112 S.Ct. 196 (1991), applying the same standard as that applied by the district court, Guilfoyle ex rel. Wild v. Missouri, Kan., & Tex. R.R., 812 F.2d 1290, 1292 (10th Cir.1987). Construing the evidence and inferences most favorably to the nonmoving party, we may find error only if the evidence is susceptible to no reasonable inferences supporting the nonmoving party such that it points but one way. See Riggs, 927 F.2d at 1149.
 
 
 8
 We reject Cadle's argument because we agree with Guarantors that the focus of the case is properly on the intent of the parties to the settlement agreement, not on construction of the guaranty agreements. Indeed, Guarantors admit that the guaranty agreements allow compromise of the underlying debt without release of Guarantors' obligations. Nonetheless, the inquiry here is whether the parties to the settlement agreement intended to do so, or whether the settlement agreement was intended to also release Guarantors' liability.
 
 
 9
 Cadle challenges the district court's denial of its directed verdict motion and its submission of the accord and satisfaction defense to the jury, contending that the facts do not support a finding of accord and satisfaction. Cadle argues that, because Dayspring paid less than its undisputed previous indebtedness, the settlement agreement between it and CAMCO cannot be an accord and satisfaction, as a matter of law. We agree with Guarantors that this argument is contrary to Oklahoma law. "Unquestionably, there may be an accord and satisfaction of a debt or judgment by payment of an amount less than the sum owed where in addition to the money paid, other consideration exists. The consideration, over and above the partial payment, may include the making of an accord where the debtor is insolvent or where conditions exists thereby creating doubt about recovery...." Youngstown Sheet & Tube Co. v. Westcott, 147 F.Supp. 829, 831 (W.D.Okla.1957). Our review of the record reveals evidence about Dayspring's financial condition and the limited ability of Guarantors to pay Dayspring's debt from which the jury could have found additional consideration of this type. Accordingly, the district court properly denied Cadle's directed verdict motion. Additionally, on this basis, and where the district court found ambiguity in the settlement agreement,[2] it properly submitted the accord and satisfaction issue to the jury. See Transpower Constructors v. Grand River Dam Auth., 905 F.2d 1413, 1419 (10th Cir.1990).
 
 
 10
 Cadle claims that the jury's finding of an accord and satisfaction was "clearly erroneous." Our review of the jury's verdict is limited to a determination of whether it is supported by substantial evidence in the record. Comcoa, Inc. v. NEC Tels., Inc., 931 F.2d 655, 663 (10th Cir.1991). Cadle argues that conflicting testimony regarding the parties' intent during the settlement agreement negotiations as to Guarantors' liability precludes the jury's verdict, because an accord and satisfaction requires a meeting of the minds. Cadle's argument begs the question. Faced with such conflicting evidence, the jury's function is to reach an "ultimate conclusion of fact." Shute v. Moon Lake Elec. Ass'n, Inc., 899 F.2d 999, 1004 (10th Cir.1990). We find evidence in the record from which the jury could have determined that the parties, in making the settlement agreement, intended that Guarantors' liability be released. Such evidence is substantial support for the jury's finding of an accord and satisfaction.
 
 
 11
 Finally, Cadle challenges the district court's ruling on its Motion in Limine. Cadle moved, pursuant to Fed.R.Evid. 402 and 403, to preclude any evidence of the purchase price it paid to CAMCO for the Dayspring note and guaranty agreements. Cadle argues that this evidence had no relevance to the intent of the parties to the settlement agreement and, alternatively, that any relevance was outweighed by the prejudice that resulted. Cadle contends that the prejudice resulting from the introduction of this evidence was demonstrated when the jury first returned a verdict for Cadle in the amount of $20,000.00 before finally reaching a take-nothing verdict against Cadle.[3]
 
 
 12
 Evidentiary rulings, including the balancing of relevancy versus prejudice, are matters left to the district court's discretion. United States v. Harrison, 942 F.2d 751, 759 (10th Cir.1991). Accordingly, our review of this issue is limited to whether the district court abused its discretion. Id. We find no such abuse in the record. The district court found the evidence relevant to CAMCO's intent in negotiating the settlement agreement. Evidence of such intent was both relevant and important, given the court's ruling that the settlement agreement was ambiguous. " 'Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under [Federal] Rule [of Evidence] 403.' " United States v. Sides, 944 F.2d 1554, 1563 (10th Cir.) (quoting United States v. Naranjo, 710 F.2d 1465, 1469 (10th Cir.1983)), cert. denied, 112 S.Ct. 604 (1991) (citation omitted). Despite the jury's initial confusion, we do not believe the ruling resulted in prejudice which substantially outweighed the relevance of evidence regarding CAMCO's intent.
 
 
 13
 The judgment of the United States District Court for the Western District of Oklahoma is AFFIRMED.
 
 
 
 *
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 First Interstate Bank acquired the Dayspring note, which was secured by an interest in certain real property in Oklahoma City, through the Federal Deposit Insurance Corporation following the failure of the Oklahoma National Bank and its successor, the Oklahoma National Bank and Trust Company. During the negotiations with Dayspring, First Interstate returned the Dayspring note to the FDIC, pursuant to First Interstate's original acquisition agreement with the FDIC. The FDIC, through its designated management company, Consolidated Asset Management Company (CAMCO), finalized the negotiations with Dayspring
 
 
 [2]
 As Guarantors note, Cadle does not challenge the district court's ruling that the settlement agreement was ambiguous with regard to the parties' intent as to Guarantors' liability
 
 
 [3]
 Following this first verdict, the district court judge sent the jury back for further deliberations, stating that if the jury were to find for the plaintiff, the verdict must be for the full amount sought in the case
 The record reflects that Cadle paid $4,747.51 for the Dayspring note and guaranty agreements. Cadle's principal testified that, internally, he valued the asset at between $20,000.00 and $25,000.00.