47 F.3d 1169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert C. JOHNSON, Plaintiff-Appellant,
v.
FRUIT BELT ELECTRIC, Defendant-Appellee.
 Nos. 93-1932, 93-2442.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1995.
 
 Before: KENNEDY, RYAN, and NORRIS, Circuit Judges.
 RYAN, Circuit Judge.
 
 
 1
 Plaintiff, Robert C. Johnson, filed suit against defendant, Fruit Belt Electric, for injuries Johnson suffered when the helicopter he was piloting crashed after it struck utility wires maintained by Fruit Belt. The district court granted summary judgment in favor of Fruit Belt. Johnson now appeals, claiming the district court erred in determining that Fruit Belt did not owe a legal duty to Johnson to either mark or move the utility lines. Fruit Belt has filed a cross-appeal, claiming the district court erred in refusing to impose mediation sanctions on Johnson.
 
 
 2
 We affirm the district court's decision on both issues.
 
 I.
 
 3
 Johnson resides in Indiana and makes his living as a "crop duster." On July 27, 1990, he flew his helicopter to White Pigeon, Michigan, to dust a field of seed corn. As a result of injuries sustained when Johnson's helicopter crashed, he has no memory of the events of that day. Witnesses, however, say that after Johnson arrived at the field, he made two complete circles of the field at relatively low altitudes. This survey took approximately ten minutes. He then landed on his water truck and loaded his helicopter with the necessary mixture of chemicals and water.
 
 
 4
 At about 8:00 a.m., immediately after loading up, Johnson began to spray the field. Shortly after starting his first pass, Johnson struck first one, then a second set of 7200-volt overhead electrical lines, which were strung diagonally across the field. One wire was 18'3" off the ground, and the second wire was 21' above the ground. Moments after striking the first set of wires, Johnson crashed into the second set of wires strung just east of the field. The helicopter then crashed, causing Johnson to suffer severe injuries.
 
 
 5
 A few more miscellaneous facts are relevant. First, the weather conditions on the day of the accident are in dispute. The reported visibility was four or five miles, but witnesses differ as to whether it was foggy, hazy, or very clear. The parties agree that no utility poles were located in the field itself. They also agree that the wires were supported by poles found around the perimeter of the field and that these poles were clearly visible. The parties also note that, after the accident, the Federal Aviation Administration did not cite Fruit Belt for failure to mark the lines, and they agree that the lines were not located near a controlled airstrip.
 
 
 6
 Johnson filed suit against Fruit Belt, the utility that owned the wires, alleging claims of negligence and nuisance. He filed the action in federal court on the basis of diversity of citizenship. Prior to trial, Fruit Belt moved for summary judgment on all counts. The district court granted the motion as to the nuisance claims, but denied it with respect to the negligence claims. Later, however, the district court issued a second order granting Fruit Belt's motion on the negligence claims. In the second opinion, the district court stated that, during the process of preparing for trial, the court became convinced that it had erred in earlier denying the defendant's summary judgment motion as to the negligence claims. Johnson now appeals.
 
 II.
 
 7
 The essence of Johnson's argument is that Fruit Belt should have foreseen that crop dusting activities would take place in the area and that the power lines could present a hazard to those activities. In support of this argument, Johnson points to affidavits and depositions by Fruit Belt employees who state that they had seen crop dusters all over the area, and that they had, in the past, repaired lines struck by crop dusting aircraft. Johnson contends that once foreseeability is established, it immediately becomes clear that Fruit Belt owed Johnson a duty to mark the lines, since the risk posed to pilots by these lines is so great. Johnson also argues that the burden upon Fruit Belt is minimal because inexpensive marking devices are readily available. Fruit Belt contends that it owed no duty to Johnson because it was not reasonably foreseeable that Johnson would fly his aircraft into Fruit Belt's lines; rather, Johnson's doing so was a "fortuitous event" for which Fruit Belt cannot be held liable.
 
 
 8
 The court's review of a grant of summary judgment is de novo; the test here and in the trial court is the same. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). In reviewing summary judgment motions, courts must view the evidence in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Under Fed.R.Civ.P. 56(c), summary judgment is proper if all the evidence before the district court "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988). Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings, and by affidavits, or by " 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) (quoting Fed.R.Civ.P. 56(e)).
 
 
 9
 The parties agree that this diversity action is governed by Michigan law. Defendant is a Michigan company, and plaintiff's injuries were sustained in Michigan. The Michigan Supreme Court recently addressed the duty of power companies to persons who might potentially come into contact with the companies' wires. Schultz v. Consumers Power Co., 506 N.W.2d 175 (Mich.1993). Before beginning our analysis of whether a duty exists and the relevance of the Schultz decision, one preliminary observation is in order.
 
 
 10
 Both parties spend a good deal of time discussing the significance of whether Fruit Belt complied with the relevant National Electrical Safety Code and the Federal Aviation Administration standards in erecting the wires and not marking them. The Schultz court declared that an argument based on compliance with industry standards "goes to the question whether a defendant breached its duty of ordinary care, not whether a duty existed." Id. at 180. The latter question is an issue for the jury, not for a judge on summary judgment. Id. at 181. Accordingly, we shall disregard those arguments for purposes of considering whether Fruit Belt owed Johnson a duty to mark or relocate the lines, and whether the district court erred in finding that no such duty existed.
 
 
 11
 As in the Schultz case, the issue for decision here is whether defendant owed a duty to plaintiff. If not, then the district court was correct to grant summary judgment for Fruit Belt. Schultz was a wrongful death action by the personal representative of a man killed when electricity apparently arced from an uninsulated wire to an aluminum extension ladder. In looking specifically at the duties of a power company, the Schultz court stated:
 
 
 12
 [C]ompelling reasons mandate that a company that maintains and employs energized power lines must exercise reasonable care to reduce potential hazards as far as practicable.... Therefore, pursuant to its duty, a power company has an obligation to reasonably inspect and repair wires and other instrumentalities in order to discover and remedy hazards and defects.
 
 
 13
 Another important variable in determining whether defendant owed a duty is foreseeability--"whether it is foreseeable that the actor's conduct may create a risk of harm to the victim...."
 
 
 14
 Id. at 178 (citation omitted). Schultz, because of its facts, does not provide much guidance to courts facing issues of duty and foreseeability. A number of decisions of the Michigan Court of Appeals, however, are helpful to our understanding of these concepts.
 
 
 15
 Michigan courts consider a number of factors in determining the existence of a legal duty: "The determination of whether a duty should be imposed upon a defendant is based on the balancing of the societal interest involved, the severity of the risk, the burden upon the defendant (to meet the duty), the likelihood of occurrence and the relationship between the parties." Swartz v. Huffmaster Alarms Systems, Inc., 377 N.W.2d 393, 395 (Mich.App.1985). In addition, Michigan courts have sometimes considered public policy implications in making a determination whether a legal duty exists in a specific situation. Moore v. St. Joseph Nursing Home, Inc., 459 N.W.2d 100, 102 (Mich.App.1990). As is apparent from Schultz and numerous other cases, however, foreseeability is the key factor.
 
 
 16
 In an earlier case involving an airplane striking a power line, the Michigan Court of Appeals framed the question of duty as follows:
 
 
 17
 "[T]he law is complied with when an electric or telephone company or others engaged in the transmission or use of electricity provide such a protection as will safely guard against any contingency that is reasonably to be anticipated. The extent of the duty or standard of care is measured in the terms of foreseeability of injury from the situation created. There is no duty to safeguard against occurrences that cannot be reasonably expected or contemplated. A failure to anticipate and guard against a happening which would not have arisen but for exceptional or unusual circumstances is not negligence, nor does the law require those maintaining power transmission lines to anticipate every possible fortuitous circumstance that might cause injurious contacts with those lines."
 
 
 18
 Gunn v. Edison Sault Elec. Co., 179 N.W.2d 680, 682 (Mich.App.1970) (quoting 26 Am.Jur.2d Sec. 43, p. 252).
 
 
 19
 The power lines involved in this case were erected in 1954 and have been located in the same place since that time. Johnson produced no evidence to refute Fruit Belt's claim that the electric company has never received any complaints about the lines, any requests that the lines be marked, or any reports that an aircraft struck these lines. Fruit Belt also produced undisputed evidence that the poles supporting these wires are clearly visible; they are not obscured by trees or other obstacles. Johnson does argue that the lines themselves were not visible to him, but that is not dispositive of the case. Fruit Belt presented unrefuted evidence that showed pilots are taught to "flythe poles," due to the frequent problems involved in locating the wires themselves from an aircraft. Fruit Belt argues that if the poles were not obscured--and the district court found they were not--then Johnson should have been able to locate the wires. Although the district court misspoke as to the visibility of the wires, we think the misstatement is not critical.[1]
 
 
 20
 In its opinion, the district court concluded that the power lines were not located in a common flight path. Johnson asserts that this determination is erroneous. A key component of Johnson's argument is that crop dusting was a regular activity in the area and that Fruit Belt knew about it. Johnson contends the lines were in a "common flight path for agricultural aircraft." The only evidence to support this proposition is the deposition testimony of Fruit Belt's repairman, who stated that he had seen crop dusting aircraft in the area and that he had repaired lines struck by planes. That same repairman, however, also testified that he had never recommended that a line be moved because "it's not common practice for fruit planes to hit lines. They're not supposed to be that low." Fruit Belt contends that it could not have reasonably known that a helicopter would be used the day of the accident. Apparently, helicopters fly much lower than airplanes do when crop dusting. Johnson has not produced any evidence to show that helicopters were routinely used to crop dust in the area, or that Fruit Belt had any actual notice that helicopters were in use.
 
 
 21
 It does appear that the district court erred in asserting that the day of the accident was sunny. According to Johnson, witness testimony varies about the weather condition. This error, however, does not warrant reversal. Assuming the day was hazy or foggy would still not help Johnson show that Fruit Belt owed him a duty. It was simply not foreseeable that a helicopter pilot, who was presumably trained to "flythe poles," would rely on the visibility of the wires when flying his helicopter in the early morning during a crop dusting run on an unfamiliar field.
 
 
 22
 The district court correctly concluded that Fruit Belt did not owe Johnson a duty to mark the wires in question or to string them around the edge of the field. Neither of these failures created an unreasonable risk of foreseeable injury.
 
 III.
 
 23
 The District Court for the Western District of Michigan has a local court rule allowing judges to send cases to mediation. W.D.Mich.L.R. 42. This rule is consistent with the State of Michigan's policy of sending civil cases to mediation in an effort to encourage settlement of litigation. This case was submitted to mediation pursuant to Local Rule 42, and a unanimous mediation panel set an award of $25,000 in favor of Johnson. Fruit Belt accepted this award, but Johnson rejected it.
 
 
 24
 Local Rule 42(n) incorporates Michigan law, specifically Mich.Comp.Laws Secs. 600.4969 et seq., which establishes the circumstances in which mediation sanctions are to be awarded. Section 600.4969 provides that a party who rejects a mediation evaluation which is accepted by the other side, and, after trial, fails to obtain a verdict "more favorable ... than the mediation evaluation," shall pay the opposing party's actual costs "and a reasonable attorney fee." Mich.Comp.Laws.Ann. Sec. 600.4969 (West 1987).
 
 
 25
 The district court entered summary judgment in favor of Fruit Belt and dismissed this case on June 8, 1993. On June 25, Fruit Belt moved for an award of mediation sanctions, including attorney fees. On September 29, 1993, the district court denied Fruit Belt's motion, determining that, under Michigan Court Rule 2.403(O)(2)(c), Michigan would not allow mediation sanctions when the motion for summary judgment was filed prior to the mediation hearing, as was the case here.[2] Fruit Belt filed a motion for reconsideration. On October 28, the district court entered an opinion and order upholding the denial of sanctions. Fruit Belt then appealed, and the appeal was consolidated with Johnson's appeal on the merits of the litigation.
 
 
 26
 Fruit Belt contests the district court's interpretation of Michigan Court Rule 2.403(O)(2)(c). According to Fruit Belt, the district court placed too much emphasis on the wording of the rule, as opposed to the rule's intent. Fruit Belt argues that the court rule was designed to impose sanctions on parties such as Johnson, who reject a mediation award and then lose a summary judgment motion after mediation but before trial.
 
 
 27
 Our analysis of this issue begins with Tiedel v. Northwestern Michigan College, 865 F.2d 88 (6th Cir.1988). Tiedel, also an airplane crash case out of the Western District of Michigan, was a diversity action arising out of the crash of an aircraft during a flying lesson. The district court in that case referred the action to mediation pursuant to an earlier version of Local Rule 42. The mediation panel rendered a unanimous evaluation of "no cause," which was accepted by the defendant and rejected by the plaintiff. The defendant subsequently won a jury verdict, and the district court ultimately awarded the defendant attorney fees as a mediation sanction.
 
 
 28
 On appeal, this court considered whether a federal district court could award attorney fees as a mediation sanction pursuant to a local court rule. The court recognized that "[i]n Alyeska Pipe Line Service Co. v. Wilderness Society, 421 U.S. 240 ... (1975), the Supreme Court indicated that in a typical diversity case, attorneys' fees should be awarded only if authorized under state law." Id. at 92 (parallel citations omitted). The court went on, however, to declare:
 
 
 29
 But this rule does not automatically place this case within Michigan law for two reasons. First, permission under state law does not mean a practice is constitutional or consistent with the Acts of Congress or the Federal Rules of Civil Procedure. Second, the attorneys' fees were taxed to the plaintiff pursuant to Local Rule 42, not state law.
 
 
 30
 Id.
 
 
 31
 The court then reviewed federal law regarding the shifting of attorney's fees. The court ultimately concluded:
 
 
 32
 The taxation of actual attorneys' fees as costs in federal courts is an extraordinary remedy, allowed normally only where Congress has expressly created an exception to the "American rule" and authorized them in the substantive statutory right at issue in the litigation. Awarding attorneys' fees is not merely a matter of procedural or judicial efficiency, and authority to do so will rarely be found in the inherent powers of the district courts. If a general rule may be read in Alyeska Pipe Line and its progeny, it is that the Supreme Court will not allow itself or other federal courts to vary the uniform scheme of costs and fees as set forth in the 1853 Fee Act, other than those narrowly defined circumstances of cases involving bad faith or abusive litigation, disobedience of court orders or the common fund doctrine. As seen in this light, a local rule which purports to authorize a district court to award attorneys' fees as part of a pretrial mediation scheme is contrary to the intent of Fed.R.Civ.P. 68, as interpreted by the Supreme Court in Crawford Fitting Co. [v. J.T. Gibbons, Inc., 482 U.S. 437 (1987) ], Marek [v. Chesny, 473 U.S. 1 (1985) ], and Alyeska Pipe Line [supra ].
 
 
 33
 Id. at 93-94.
 
 
 34
 After Tiedel, the Western District of Michigan amended Local Rule 42 to incorporate Michigan law regarding mediation sanctions for those cases. According to the drafters' notes, Michigan law regarding mediation sanctions is substantive rather than procedural. The notes then point out that, under the Erie doctrine, federal courts are required to apply state substantive law in diversity cases. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938).
 
 
 35
 We think, however, that there are compelling reasons to conclude, contrary to the opinion of the drafters of Western District of Michigan Local Rule 42, that the Michigan mediation process, codified at Mich.Comp.Laws Secs. 600.4951-4969, is "procedural" and not "substantive," and thus is not, under Erie, applicable in this diversity case.
 
 
 36
 But we need not decide this issue for two reasons: First, since the question was not raised by the parties or briefed or argued, we are not inclined to render an advisory opinion in the matter, and, second, even if the Michigan mediation statute is applicable to this case as substantive law, the district court properly concluded that Fruit Belt was not entitled to attorney fees and costs due to a procedural default. Michigan Court Rule 2.403(O)(2)(c), which partially implements Mich.Comp.Laws Sec. 600.4969, requires a motion for summary judgment to be filed after the mediation hearing in order to recover mediation sanctions. Fruit Belt, however, filed for summary judgment on November 6, 1992, four days before the mediation hearing which was held on November 10, 1992. Thus, regardless of whether the Michigan law requiring parties to submit to mediation and allowing recovery of mediation costs and attorney fees is a procedural or substantive rule of law, Fruit Belt is not entitled to mediation costs and attorney fees.
 
 IV.
 
 37
 The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 Johnson attacks the district court's statement that the wires, poles and insulators were in the open and could be readily seen by any observer. Johnson contends that the affidavit relied on for this proposition actually only states that the poles were not obstructed or within the tree line. According to Johnson, the visibility of the wires is a key issue in the suit, as he argues that the wires were not visible and thus needed to be marked. As is clear from this opinion, however, Johnson's conclusion is in error
 
 
 [2]
 Michigan Court Rule 2.403(O)(2) provides:
 (2) For the purpose of this rule "verdict" includes,
 (a) a jury verdict,
 (b) a judgment by the court after a nonjury trial,
 (c) a judgment entered as a result of a ruling on a motion filed after mediation.
 (Emphasis added.)