992 F.2d 1109
 FEDERAL DEPOSIT INSURANCE CORPORATION, a corporation
existing under the laws of the United States,
Plaintiff-Appellant,
v.
Charles W. APPLING, Mark S. Brown, Ann L. Baumann
Stonehocker, and B.J. Crittendon, Defendants-Appellees.
 Nos. 91-6149, 91-6277 and 91-6332.
 United States Court of Appeals,
Tenth Circuit.
 May 3, 1993.
 
 John P. Parker, Sr. Atty., F.D.I.C., Washington, DC (Ann S. DuRoss, Asst. Gen. Counsel, Richard J. Osterman, Jr., Sr. Counsel, Joan Parks Saunders, Sr. Atty., F.D.I.C., Washington, DC, Sarah W. Hays and W. Dennis Cross of Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, MO, and Donna N. Blakley of Watson & McKenzie, Oklahoma City, OK, with him on the briefs), for plaintiff-appellant.
 Jack T. Crabtree of Crabtree & Associates, Oklahoma City, OK, for defendant-appellee Charles W. Appling.
 Elizabeth Riley Castleberry (Terry W. Tippens, with her on the brief), of Fellers, Snider, Blankenship, Bailey & Tippens, Oklahoma City, OK, for defendants-appellees Ann L. Baumann Stonehocker and B.J. Crittendon.
 B. Wayne Dabney and Deborah A. Moon of Hays & Dabney, Chickasha, OK, on the brief for defendant-appellee Mark S. Brown.
 Before MOORE and SETH, Circuit Judges, and CAMPOS, District Judge*.
 SETH, Circuit Judge.
 
 
 1
 This appeal is in an action brought by the Federal Deposit Insurance Corporation (FDIC) against officers and directors of a failed bank, the First National Bank of Rush Springs, Oklahoma. The Bank was declared insolvent by the Comptroller of the Currency and the FDIC was designated as receiver of the Bank. The FDIC acted pursuant to 12 U.S.C. § 1821(c), (d), in that capacity. In its corporate capacity the FDIC had insured deposits of the Bank, and it received assets of the Bank in that capacity, and claims against officers and directors. 12 U.S.C. §§ 1811, 1821.
 
 
 2
 This suit by the FDIC against officers and directors of the Bank was for their actions and inaction in the management of the Bank, and is directed to particular loans. These total about five million dollars. The complaint alleges negligence, breach of fiduciary duty, breach of regulations by the directors and related allegations.
 
 
 3
 It is apparent that there were serious defaults over a period of time by the borrowers on these loans. The Defendants assert that the defaults were caused by serious local economic problems in agriculture and in oil production and marketing. The FDIC asserts that the loans were improper, violated regulations and were not properly controlled nor supported by adequate documentation.
 
 
 4
 The FDIC has broad powers in the handling of assets of failed banks. Under 12 U.S.C. § 1823(d)(4) it "may purchase and liquidate or sell any part of the assets of an insured depository institution which is now or may hereafter be in default."
 
 
 5
 The FDIC also, under 12 U.S.C. § 1821(d)(2)(A)(i), succeeds to
 
 
 6
 "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution."
 
 
 7
 The loans upon which the suit is based fall into two separate groups as a result of the trial court's rulings. One group consists of loans sold in bulk by the FDIC to other institutions and also loans settled by negotiation with the borrowers by the FDIC. As to this group the trial court granted Defendants' motion for summary judgment. The court granted the motion on the ground that the Defendants had the right of subrogation against these borrowers which right was destroyed when the FDIC sold or settled the loans. The FDIC appeals this ruling.
 
 
 8
 The second group of loans were ones which were still held by the FDIC, that is, not sold or settled. The trial proceeded to the jury on these loans, the balances on which totaled about $1,300,000.00. The jury returned a verdict for the Defendants as to their actions or inaction as to such loans. The FDIC appeals this determination asserting that the jury instructions were improper and incomplete. There is as to one Defendant, Charles Appling, a statute of limitations issue.
 
 
 9
 * Loans Sold or Settled by the FDIC and Subrogation
 
 
 10
 On the subrogation issue, which pertained only to the loans the FDIC had sold or negotiated settlement, the trial court, in granting the motion of Defendants for summary judgment, held that Defendants had lost their rights to subrogation against the borrowers. This loss, the court held, resulted from the sales and negotiations of settlement whereby the FDIC gave up any right to proceed or to have any recourse against the borrowers on such loans. Thus the loss of recourse on the loans the trial court held wrongfully cut off Defendants' right of subrogation. The court thus entered judgment for Defendants insofar as these loans were a part of the FDIC causes of action.
 
 
 11
 In the application of the subrogation doctrine generally, the relationship of the several persons or entities is determinative. The obligations of the borrowers were, of course, on the notes and ran directly to the Bank (as long as it was the holder). The only obligation on the loans--the notes--was thus that of the borrowers to the Bank. The Defendants here owed no duty to the Bank to pay the notes or repay the loans no matter how bad they were. This suit is against the officers and directors of the Bank, who were representatives of the Bank in making and supervising the loans for wrongfully making and supervising the lending. Their obligations instead were very different and separate from those of the borrowers, and originated in different relationships. If the loans after they were made were not properly supervised or managed the Defendants had not fulfilled their duty as directors or officers to the Bank. Thus also, if the loans were improperly, illegally or negligently made, the Defendants could be held liable again for a breach of duty to the Bank. This liability was not for any obligation to pay the loans, but instead for the way they were made. The dollars concerned related not to liability, but only were a measure of damages. Thus the legal relationship of the borrowers to the Bank, and that of the Defendants to the Bank, were for these purposes unrelated. The fact that the acts or inaction of both may have been concerned with the Bank's or depositors' dollars, or lack thereof, does not connect the borrowers with the Defendants in any way here pertinent.
 
 
 12
 There was and there is no way that the Defendants as officers and directors could bring an action against the borrowers on the borrowers' loan obligations. The Bank as a separate entity was the only party that could do so but not now. We can see why the Defendants could mistakenly take the position "they" could have sued the borrowers because the Defendants directly or indirectly owned all the stock in the Bank. The Bank was nevertheless a separate corporate entity.
 
 
 13
 The Defendants had in no way, at any time, a duty or liability to pay the Bank on the borrowers' obligations, and they did not do so. The borrowers, of course, had no duty to the Defendants for anything.
 
 
 14
 If the Defendants have to pay a judgment on the FDIC claims here made, they are not paying on the loans. Instead they would be paying on a separate personal liability for their failure of duty to the Bank. The Defendants have confused a method for measuring damages for wrongdoing should they be held liable, the losses on the loans, with the basic matter of the source, origin of their liability, arising from their relationship to the Bank.
 
 
 15
 As indicated in the description of the source of the legal relationship between the borrowers and the Bank, the borrowers and the Defendants, and the Defendants and the Bank, we are concerned only with the very basic elements of the doctrine of subrogation which are of general application. Thus it is not necessary to consider minor variations presented in many of the cases cited by the parties. There can be no significant distinction for our purposes whether federal common law or state law is applied. See United States v. Kimbell Foods, Inc., 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711; FDIC v. Bank of Boulder, 911 F.2d 1466 (10th Cir.) (en banc); Bank of Meeker v. Hair, 261 P.2d 870 (Okla.).
 
 
 16
 We must hold that the doctrine of subrogation was not applicable in any form, and the trial court's grant of the motion for summary judgment based thereon must be and is REVERSED.
 
 
 17
 There was nothing established by the Defendants that there was any interference with any collateral or security for the loans. In any event, there was no showing made that Defendants had any interest in collateral.
 
 II
 
 18
 The Trial to the Jury Based on the Loans Not Sold or Settled
 
 
 19
 by the FDIC
 
 
 20
 As mentioned, the jury held that the Defendants were not liable for a failure of their duties as they pertained to the loans not sold or settled by the FDIC. The FDIC has appealed asserting that the instructions to the jury were incomplete and erroneous. The FDIC also argues that the instructions should have listed the substantive duties of the directors.
 
 
 21
 As to the listing in instructions of functions or duties of the Defendants, this is not required nor necessary as it is essentially a restatement of the facts. When the instructions are taken as a whole there is no indication that the jury was not fully informed as to the law to guide their decision-making process. Shute v. Moon Lake Electric Ass'n, 899 F.2d 999 (10th Cir.).
 
 
 22
 The FDIC also asserts that the district court failed to include specific instructions on breach of fiduciary duty. The proposed Instruction No. 22 stated:
 
 
 23
 "As directors and officers of the First National Bank of Rush Springs, defendants owed a fiduciary duty to the Bank and its depositors. That duty required defendants to exercise the degree of care in their management of the Bank that ordinarily prudent and diligent men and women would exercise under similar circumstances."
 
 
 24
 The above-quoted language was followed by a list of duties the officers and directors were required to perform in order to fulfill the duty of care.
 
 
 25
 The instructions actually given by the court were substantially the same as the section of the proposed instruction quoted above. In Instruction No. 15, the court stated that the FDIC must establish that:
 
 
 26
 "[D]efendants failed to use the same degree of care, skill, and diligence that would be used by an ordinarily prudent and diligent bank director/officer under the same or similar circumstances in the making, approval, or administration of a loan...."
 
 In Instruction No. 16, the court stated:
 
 27
 "Directors of a bank are responsible for the overall supervision and direction of the affairs of the Bank. It is their duty to use ordinary diligence in ascertaining the condition of the Bank's business and to exercise reasonable control and supervision of the Bank's officers. Directors cannot turn over the unrestricted management of the business of the Bank to the exclusive control of other officers. Directors may be held liable for the imprudent acts or omissions of officers to whom they entrust the Bank's business, if the directors are negligent in their own oversight as described in these instructions."
 
 
 28
 And in Instruction No. 17, the court stated:
 
 
 29
 "In the performance of their duties, directors and officers of a bank must use the same degree of care, skill and diligence used by ordinarily prudent and diligent bank directors and officers under the same or similar circumstances. The law does not specify how an ordinarily prudent and diligent bank director or officer would act under particular circumstances. That is for you to decide as a matter of fact."
 
 
 30
 The primary difference between the proposed instruction and the ones given is that the FDIC's proposed Instruction No. 22 included a list of specific duties of officers and directors.
 
 
 31
 As mentioned, it was not necessary for the instructions to break down the duties of Defendants into a list of separate tasks and separate responsibilities. This had been described to the jury in the evidence. The facts were before the jury and need not have been repeated. The jury had to consider the total which it had and reach a conclusion as the overall obligations of the Defendants in the circumstances.
 
 
 32
 The instructions given taken as a whole were proper, and included the elements contained in our opinion in Hoehn v. Crews, 144 F.2d 665 (10th Cir.). We there said: "Officers and directors of banks are fiduciaries and at common law the liability for their acts is such as stems from such a relationship." Hoehn, 144 F.2d at 672. The extent of the fiduciary duty was stated as follows:
 
 
 33
 "The duty resting upon directors has been variously defined as requiring such care and diligence as an ordinarily prudent man would exercise with reference to the administration and management of such a moneyed institution. It has been said that they owe a high degree of duty to the general public and stockholders."
 
 
 34
 Id. (footnotes omitted). This statement of the "fiduciary duty" is the prevailing one in this circuit. The instructions given in the case before us were sufficient. They described the prevailing standard of care.
 
 
 35
 Thus, even if there were a jury instruction with explicit "fiduciary duty" language, the standard would have been the same as in the negligence instruction. "Although the wording in the instruction given by the court differed from the wording in the instruction requested by the Bank, the substance was the same." Kitchens v. Bryan County Nat'l Bank, 825 F.2d 248, 254 (10th Cir.).
 
 III
 Jury Instructions--Lending Limit Violation
 
 36
 12 U.S.C. § 84 establishes the lending limits for national banks. It states:
 
 
 37
 "The total loans and extensions of credit by a national banking association to a person outstanding at one time and not fully secured, as determined in a manner consistent with paragraph (2) of this subsection, by collateral having a market value at least equal to the amount of the loan or extension of credit shall not exceed 15 per centum of the unimpaired capital and unimpaired surplus of the association."
 
 
 38
 12 U.S.C. § 84(a)(1). The standard for liability for violation of the lending limit is set out in 12 U.S.C. § 93:
 
 
 39
 "If the directors of any national banking association shall knowingly violate, or knowingly permit any of the officers, agents, or servants of the association to violate any of the provisions of this chapter, all the rights, privileges, and franchises of the association shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper district or Territorial court of the United States in a suit brought for that purpose by the Comptroller of the Currency, in his own name, before the association shall be declared dissolved. And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the association, its shareholders, or any other person, shall have sustained in consequence of such violation."
 
 
 40
 12 U.S.C. § 93(a) (emphasis added).
 
 
 41
 The current state of the law, as indicated in the cited cases, is as follows:
 
 
 42
 (1) The Defendants must have participated in or assented to the excessive loan or loans, not through mere negligence but knowingly and in effect intentionally. Corsicana Nat'l Bank v. Johnson, 251 U.S. 68, 71, 40 S.Ct. 82, 84, 64 L.Ed. 141 (citing Yates v. Jones Nat'l Bank, 206 U.S. 158, 180, 27 S.Ct. 638, 645-46, 51 L.Ed. 1002).
 
 
 43
 (2) If the Defendants deliberately refrained from investigating that which it was their duty to investigate, any resulting violation of the statute must be regarded as "in effect intentional." Corsicana, 251 U.S. at 71-72, 40 S.Ct. at 84-85.
 
 
 44
 (3) The knowledge required of the Defendants is not knowledge of the law itself, but an awareness of the facts that constitute a violation. Cache Nat'l Bank v. Hinman, 626 F.Supp. 1341, 1343 (D.Colo.) (citing Del Junco v. Conover, 682 F.2d 1338, 1342 (9th Cir.)). See also Larimore v. Conover, 775 F.2d 890, 895 (7th Cir.), where the Seventh Circuit upheld a finding of a knowing violation of the lending limit as made by the Comptroller of the Currency, although defendants claimed they had no actual knowledge of the lending limits of the bank and no knowledge that the loans exceeded those limits.
 
 
 45
 Jury Instruction No. 27 in this appeal provided in pertinent part:
 
 
 46
 "Before a director of a national bank becomes personally liable for violation of a statutory duty, it must be proven by a preponderance of the evidence that he or she intentionally and knowingly violated the statutory requirements. A defendant acts knowingly with respect to such violations if he or she recklessly and deliberately refrains from investigating that which he or she had a duty to investigate. Therefore, it is your duty to determine whether any officer or director intentionally or knowingly violated the lending limit statutes based upon the facts and evidence."
 
 
 47
 In contrast, the FDIC's proposed Instruction No. 17 stated in relevant part:
 
 
 48
 "Any defendant who knowingly participates in or assents to a violation of the National Bank Act is liable for the full amount of loss, including principal and accrued interest, sustained as a result of the extension of credit that violates the Act. Subjective awareness of a violation is not necessary for a defendant to act knowingly. A defendant acts knowingly with respect to such violations if he or she fails to investigate that which he or she had a duty to investigate."
 
 
 49
 The FDIC's instruction incorrectly states the law in that it fails to state that for a knowing violation to result, the failure to investigate that which a defendant has a duty to investigate must be deliberate. Corsicana, 251 U.S. at 71-72, 40 S.Ct. at 84-85. The FDIC's instruction is subject to the interpretation that a negligent failure to investigate would constitute a knowing violation, and this is incorrect.
 
 
 50
 Since the FDIC's proposed instructions did contain an incorrect statement of the law, the district court did not err in not adopting them. The instruction given was adequate.
 
 IV
 
 51
 We find no merit in the argument of the FDIC that an instruction should not have been given as to knowledge by Defendants of the penalties for excess loans. The standard expressed in Farrell v. Klein Tools, Inc., 866 F.2d 1294, 1297 (10th Cir.), was met by the testimony of Mark Brown.
 
 V
 
 52
 Statute of Limitations on Appling--Adverse Domination
 
 
 53
 The District Court granted Defendant Appling's motion for summary judgment, holding that the applicable statute of limitations for claims against Appling had expired, and that the doctrine of adverse domination did not apply. We must disagree.
 
 
 54
 The doctrine of adverse domination was described in Farmers & Merchants Nat'l Bank v. Bryan, 902 F.2d 1520 (10th Cir.). The rationale for the doctrine was there stated.
 
 
 55
 "[C]ontrol of the association by culpable directors and officers precludes the possibility of filing suit because these individuals can hardly be expected to sue themselves or to 'initiate any action contrary to their own interests.' "
 
 
 56
 F.S.L.I.C. v. Williams, 599 F.Supp. 1184, 1194 (D.Md.) (quoting FDIC v. Bird, 516 F.Supp. 647, 652 (D.P.R.)). The Tenth Circuit in Bryan stated that in the context of reviewing the trial court's denial of the Defendant's motion for directed verdict, the issue was:
 
 
 57
 "[W]hether there was evidence, when viewed in the light most favorable to plaintiffs, upon which a reasonable jury could find both (1) that the two outside directors knew or should have known the facts giving rise to possible liability and (2) that neither director could or would have induced the corporation to sue."
 
 
 58
 Bryan, 902 F.2d at 1523.
 
 
 59
 In this case, there appears to be ample evidence that the board of directors knew of the facts giving rise to possible liability, as evidenced by the measures taken by them against Appling, i.e., the bond claim and the criminal referral.
 
 
 60
 The bond claim was for losses caused by "negligent, illegal and/or fraudulent lending practices during the time C.W. Appling was President." Aplt.App. 7 at 29. The claim was ultimately denied because there was "no fact or evidence to support allegations of fraud or dishonesty on the part of the principal which would give rise to [a] claim under the bond." Aplt.App. 7 at 40. The statement denying the claim may not have been as broad as the submission but it was the extent of the action. It appears that the bond claim did not succeed in an investigation of statutory violations, but was primarily to investigate fraud or dishonesty by Appling. It did not become an action to hold Appling personally liable to the Bank for his actions. Thus, the bond claim against Appling did not subject the other directors to a risk of liability. Similarly, the criminal referral against Appling did not implicate the directors, either.
 
 
 61
 Despite their knowledge of Appling's activities, the directors never instigated a suit against Appling for recovery of those losses on behalf of the Bank.
 
 
 62
 The question of whether the directors took actions which were contrary to their own interests, thus precluding the application of the adverse domination doctrine, should have gone to the jury.
 
 VI
 
 63
 We find no error in the consideration and inclusion of several separate loans which included Bakers, Tibbets, Lang, and H & T Cattle Company. The position of the FDIC was preserved as to the Pittman, Hood, and Rush Springs Lumber loans.
 
 
 64
 The case is REVERSED as to the application of the doctrine of subrogation by the trial court's granting of Defendants' Motion for Summary Judgment, and also for the holding by the trial court as to the application of the statute of limitations as to the claim against Charles Appling. The judgment appealed is AFFIRMED as to all portions of the jury trial and the judgment on the verdict of the jury.
 
 
 65
 IT IS SO ORDERED.
 
 
 
 *
 Honorable Santiago E. Campos, United States District Judge for the District of New Mexico, sitting by designation