**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 19 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

FEDERAL DEPOSIT INSURANCE
CORPORATION, as successor to the
RESOLUTION TRUST
CORPORATION, as receiver for First
American Savings Bank,

      Plaintiff - Appellant,

v.

BERNARD SCHUCHMANN,

      Defendant - Appellee,

and

TARA SCHUCHMANN,

      Defendant.

No. 99-2085

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CIV-93-1024)**

---

F. Thomas Hecht, Hopkins & Sutter, Chicago, Illinois, (Claudette P. Miller, Hopkins &
Sutter, Chicago, Illinois; Ann S. DuRoss, Assistant General Counsel, Robert D.
McGillicuddy, Senior Counsel, and J. Scott Watson, Counsel, Federal Deposit Insurance
Corporation, Washington, DC, with him on the briefs) for the appellant.

Alice T. Lorenz, Miller, Stratvert & Torgerson, Albuquerque, New Mexico, (Douglas P.
Lobel and John M. Lambros, Kelley, Drye & Warren, LLP, Washington, DC, with him on
the brief) for the appellee.

Before **ANDERSON**, **BRORBY** and **LUCERO**, Circuit Judges.

**LUCERO**, Circuit Judge.

Resolution Trust Corporation ("RTC"), succeeded by the Federal Deposit

Insurance Corporation ("FDIC"), brought suit against Bernard Schuchmann alleging state

common law claims for breach of fiduciary duty, gross negligence, and negligence for his

role in various transactions while chairman of the board and controlling shareholder of

First American Savings Bank ("First American"). Following trial, a jury entered a verdict

for Schuchmann on all claims. Appealing to us, FDIC primarily challenges several of the

court's jury instructions and evidentiary rulings. We consider, inter alia, whether under

New Mexico law the district court abused its discretion in failing to instruct the jury that

the violation of federal regulations governing savings and loan institutions was negligent

as a matter of law. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in

part, reverse in part, and remand to the district court for proceedings consistent with this

opinion.

**I**

In 1985, a group of Dallas investors led by Bernard Schuchmann acquired First

American, a state-chartered savings and loan association. First American converted to a

federally-chartered savings and loan in August 1986. At all relevant times the Federal

Savings and Loan Insurance Company insured First American. First American's financial condition worsened, and it was put under the receivership of RTC.

In 1993, RTC brought suit against Schuchmann, alleging state common law claims of breach of fiduciary duty, gross negligence, and negligence for his role in various transactions while chairman of the board and controlling shareholder of First American.[1] By operation of law, in 1996 FDIC succeeded to the interests of RTC as receiver and was substituted as plaintiff. See 12 U.S.C. § 1441a(m)(1).

Three sets of transactions are at issue in this appeal: (1) a $1.8 million loan made to Custer Road Investments in April 1985 ("Custer Road") and subsequently modified; (2) a $1.65 million loan to Omni Real Estate Investments in June 1985 ("Omni"); and (3) the acquisition from 1985-1987 of a group of promissory notes collectively valued at approximately $20 million from Intervest Mortgage Partners I and Intervest Equity Partners (collectively "Intervest").

At trial, evidence of conflicts of interest, adverse domination, and statutory and regulatory violations was presented to the jury. The jury found Schuchmann negligent as to the Custer Road and Omni transactions but declined to award damages because of a lack of proximate cause. The jury found against FDIC on the Intervest note acquisitions

---

[1] This action originally named other officers and directors as defendants, but they all settled prior to trial. The action also named Tara Schuchmann. After trial, the district court granted her motion for judgment as a matter of law. FDIC does not appeal that decision.

and on the issues of gross negligence, breach of fiduciary duty, and adverse domination. FDIC appeals.

## II

We first address FDIC's allegations of erroneous jury instructions. "We review the district court's decision to give a particular jury instruction for abuse of discretion and consider the instructions as a whole de novo to determine whether they accurately informed the jury of the governing law." United States v. Cerrato-Reyes, 176 F.3d 1253, 1262 (10th Cir. 1999). "The instructions as a whole need not be flawless, but we must be satisfied that, upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them." Medlock v. Ortho Biotech, Inc., 164 F.3d 545, 552 (10th Cir. 1999) (citing Brodie v. Gen. Chem. Corp., 112 F.3d 440, 442 (10th Cir. 1997)).

### A

FDIC contends the district court "gutted" its case when the court refused to give the jury its tendered instruction entitled "Conflicts of Interest." Although a party "is entitled to an instruction on his theory of the case if the instruction is a correct statement of the law and if he has offered sufficient evidence for the jury to find in his favor, [i]t is not error to refuse to give a requested instruction if the same subject matter is adequately covered in the general instructions." Cerrato-Reyes, 176 F.3d at 1262 (internal quotations omitted); see also Woolard v. JLG Indus., Inc., 210 F.3d 1158, 1177 (10th Cir. 2000).

The instruction proffered by FDIC stated:

> [A] conflict of interest exists when an officer or director allows an institution to enter into a transaction such that the officer or director puts him or herself into a position in which a conflict may arise between the best interests of the Association and the officer's or director's personal loyalties or personal financial interest, whether direct or indirect.

(Appellant's App. at 237.) It permitted a finding of liability if "the Schuchmanns caused or allowed First American to enter into transactions whereby they placed themselves in a position creating or which could lead to a conflict of interest." (Id.) Similarly, FDIC's second proffered instruction stated that "federal regulations prohibit[] First American's directors from placing themselves in positions creating, or which could lead to, a conflict of interest or even the appearance of a conflict of interest." (Id. at 242.)

As controlling authority for the instructions it proffered, FDIC cites 12 C.F.R. § 571.7(b) (1993), which states "each director, officer, or other affiliated person of a savings association has a fundamental duty to avoid placing himself or herself in a position which creates, or which leads to or could lead to, a conflict of interest or appearance of a conflict of interest." The Third Circuit conducted a detailed analysis of the language and history of § 571.7(b) and concluded that it does not establish an enforceable standard of care: "[T]he sweeping language of section 571.7(b) indicates it is no more than a statement of policy that a director of a banking institution . . . should use as a guide for personal conduct, not a rule whose violation triggers" liability. Seidman v. OTS (In re Seidman), 37 F.3d 911, 932 (3d Cir. 1994). Relying on Seidman, appellee argues that § 571.7(b) does not impose liability but was rather issued merely "as a caution

against the risk that is added when an affiliated person . . . has a personal stake in a business transaction his savings institution is considering, a risk inherent in self-dealing." Id. at 931 (citing First Nat'l Bank v. Smith, 610 F.2d 1258, 1265 (5th Cir. 1980)).

The court in Seidman reasoned that "interpretive rules simply state what the administrative agency thinks the statute means, and only remind affected parties of existing duties[, whereas] . . . a substantive or legislative rule, pursuant to properly delegated authority, has the force of law, and creates new law or imposes new rights or duties." Id., 37 F.3d at 931 (internal quotations omitted). We have also held that such a policy statement is "a purely interpretive rule, unpromulgated under the Administrative Procedure Act, see 5 U.S.C. § 553(b)(A), and added . . . to help clarify the meaning and application of the various promulgated rules that follow it." Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1282 (10th Cir. 1994) (citing Chrysler Corp. v. Brown, 441 U.S. 281, 301-04 (1979)) (further citation omitted). Consequently, although we are sympathetic to the goals of § 571.7(b), we are bound by the earlier determination of our Circuit that it does not carry the force of law, and we need not afford it any special deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984). See Headrick, 24 F.3d at 1282.

Turning to the district court's instructions, we easily conclude that its fiduciary duty instruction accurately stated the governing law. The trial court also adequately addressed FDIC's conflict of interest theory; it refused FDIC's conflict of interest

- 6 -

instructions and instead used an instruction entitled "Breach of Fiduciary Duties." The instruction directed the jury to find against defendant on this claim if plaintiff proved by a preponderance of the evidence that defendant had breached its duty of care or duty of loyalty. It defined the duty of care to require "defendant . . . to exercise the degree of care that an ordinarily prudent and diligent director would exercise under similar circumstances," and defined the duty of loyalty to require defendant "to act with undivided good faith and in the best interests of the institution" and to prohibit "self-dealing." (Appellant's App. at 421.) This instruction is consistent with New Mexico law under which a fiduciary breaches his duty of loyalty "by placing his interests above those of the beneficiary." See Kueffer v. Kueffer, 791 P.2d 461, 464 (N.M. 1990).[2] While the instruction does not employ FDIC's preferred wording, it makes clear that defendant could be held liable if he failed to act in the best interest of the bank or if he engaged in self-dealing.

---

[2] Additional legal authority cited by FDIC in its Reply Brief supports, rather than undermines, the accuracy of the instructions given. See N.M. Stat. Ann. § 53-11-40.1(A) ("A conflict of interest transaction is a transaction with the corporation in which a director of the corporation has a direct or indirect interest."); Gearhart Indus., Inc. v. Smith Int'l, Inc., 741 F.2d 707, 719 (5th Cir. 1984) ("The duty of loyalty dictates that a director must act in good faith and must not allow his personal interests to prevail over the interests of the corporation."). The instruction given addressed this legal authority, prohibiting the defendant from involvement in any transaction that involved self-dealing or would divide his loyalty to, or ability to act in the best interests of, the institution.

**B**

The New Mexico Supreme Court has adopted the following test for determining whether a negligence per se instruction is appropriate:

(1) [T]here must be a statute which prescribes certain actions or defines a standard of conduct, either explicitly or implicitly, (2) the defendant must violate the statute, (3) the plaintiff must be in the class of persons sought to be protected by the statute, and (4) the harm or injury to the plaintiff must generally be of the type the legislature through the statute sought to prevent.

Archibeque v. Homrich, 543 P.2d 820, 825 (N.M. 1975).  In Valdez v. Cillissen & Son, Inc., 734 P.2d 1258, 1261 (N.M. 1987), the New Mexico Supreme Court added that a violation of a statute could not provide the basis for negligence per se if so construing the statutory violation "would be contrary to the clear intent of" the legislature.  Like the violation of a statute, "[v]iolation of a properly adopted and filed rule or regulation is negligence per se."  Jaramillo v. Fisher Controls Co., Inc., 698 F.2d 887, 892 (N.M. Ct. App. 1985) (citing Maestas v. Christmas, 321 P.2d 631 (N.M. 1958)).

The FDIC contends that all three transactions at issue—the Custer Road loan, the Omni loan, and the Intervest notes—violated federal and state statutes and regulations designed to protect FDIC's predecessor from the type of harm it suffered.  With respect to the Omni and Custer Road transactions, the jury found Schuchmann negligent, rendering harmless any error in refusing to give the negligence per se instruction.  Any error would be harmless even though the jury went on to find that the negligence did not proximately cause FDIC's damages because "[o]nce negligence per se is found, the fact finders would

- 8 -

still have to determine whether the negligence per se was the actual and proximate cause of the accident." Archibeque, 543 P.2d at 825 (citations omitted). FDIC urges that any error is not harmless because "even the very unlikely possibility that a jury based its verdict on erroneous instruction requires reversal." (Appellant's Reply Br. at 18.) FDIC offers no authority, and we find none, suggesting there is any possibility the jury's verdict finding an absence of proximate cause would have been different if the jury had first found Schuchmann's actions breached a duty of care under a theory of negligence per se instead of negligence.

We thus focus our inquiry on whether the district court should have instructed the jury on negligence per se with respect to the Intervest transaction and, if so, whether its failure to do so requires reversal. FDIC's proffered instruction would have directed the jury to find Schuchmann had breached his duty of care if the jury found he "allowed or caused First American to enter into transactions which violated these regulations or laws," including, in relevant part, "federal regulations limiting the type of notes which First American could acquire." (I Appellant's App. at 234.) In support of that instruction, FDIC cited 12 C.F.R. § 545.36(b)(2) (removed 1996), which requires a note secured by raw land to have a maturity date of no more than three years, and 12 C.F.R. § 545.32(b)(2) (removed 1996), which requires at least semi-annual interest payments on

notes secured by raw land.[3]  The district court refused the proffered instruction,

apparently because it did not believe the violation of a regulation, as opposed to a statute,

could constitute negligence per se.  Instead, it instructed the jury that a violation of the

described regulations "may be considered . . . as evidence that . . . defendant was

negligent or failed to meet his fiduciary duties."  (I Appellant's App. at 428.)

Negligence per se is a state law claim governed here by the laws of New Mexico.

At first look, the basis for the district court's decision not to instruct the jury on

negligence per se seems contrary to New Mexico law, which provides that a violation of a

regulation can constitute negligence per se.  See Jaramillo, 698 F.2d at 892.

Schuchmann, however, defends the district court's decision on two alternative grounds:

New Mexico law does not recognize violation of a federal law as negligence per se or,

more narrowly, it would not recognize a violation of the regulations at issue as negligence

per se because to do so would be contrary to the intent of Congress.

---

[3]  In its appellate briefs, FDIC also contends the Intervest notes impermissibly extended maturity dates and delayed interest payments in violation of state regulations, see N.M. S&L Regs. 83-7 (maturity date), 83-6 (interest payments), and were acquired without critical documentation in violation of 12 C.F.R. § 563.17-1(c)(3) (financial statements of borrowers) and 12 C.F.R. § 563.17-1(c)(3)(iii) (underwriting standards of original lenders).  Because those regulations were not cited to the district court in support of the proffered instruction, however, we will not consider them on appeal.  See Bledsoe v. Garcia, 742 F.2d 1237, 1242 (10th Cir. 1984) (holding that any alleged error in the trial court's failure to instruct the jury as requested could not be considered on appeal where the argument in favor of the instruction was not made before the district court).

Schuchmann's argument that New Mexico law does not recognize violations of federal regulations as negligence per se is unsupported by the case law. Valdez, the case he cites in support of the proposition that violation of a federal statute, without more, does not constitute a basis for finding negligence as a matter of law, simply does not establish such a broad rule. Rather, Valdez held that "[t]o negate the defendant's general standard of care and impose negligence as a matter of law in a case such as this based upon an OSHA violation, would affect . . . the common law . . . duties . . . or liabilities of employers and would be contrary to the clear intent of Congress." 734 P.2d at 1261 (internal quotations omitted) (emphasis added). Its holding, therefore, pertains to the particular federal statute at issue—OSHA—not every federal statute.

Turning to Schuchmann's second argument, the New Mexico Supreme Court has not addressed whether basing a claim of negligence per se on a violation of federal regulations governing savings and loan institutions would be contrary to congressional intent. In the absence of New Mexico law directly on point, we attempt to predict how New Mexico's highest court would rule. See Wood v. Eli Lilly & Co., 38 F.3d 510, 512 (10th Cir. 1994); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In conducting our inquiry, we are free to consider all resources available, including decisions of New Mexico courts, other state courts and federal courts, in addition to the general weight and trend of authority. See Wood, 38 F.3d at 512; Farmers Alliance Mut. Ins. Co. v. Bakke, 619 F.2d 885, 888 (10th Cir. 1980).

- 11 -

In support of its finding in <u>Valdez</u> that Congress did not intend to legislate negligence as a matter of law for any violation of OSHA, the New Mexico Supreme Court cited a section of OSHA that provides "[n]othing in this chapter shall be construed to . . . diminish or affect in any other manner the common law or statutory rights, duties, or liabilities of employers and employees." 29 U.S.C. § 653(b)(4). Schuchmann does not cite to, nor does our research reveal, such an explicit expression of intent regarding the regulations at issue.[4]

Alternatively, Schuchmann contends that Congress's intent not to create a negligence per se cause of action follows from 12 U.S.C. § 1730 (repealed 1989), which

---

[4] FDIC cites numerous district courts for the proposition that claims of negligence per se can be based on the violation of federal regulations governing savings and loans. Several of these cases, however, rely on federal common law to support the conclusion that a negligence per se action can be maintained based on such regulations. See <u>RTC v. Gladstone</u>, 895 F. Supp. 356, 369-71 (D. Mass. 1995); <u>RTC v. Heiserman</u>, 839 F. Supp. 1457, 1465-66 (D. Colo. 1993); <u>cf.</u> <u>RTC v. Hess</u>, 820 F. Supp. 1359, 1367-68 (D. Utah 1995) (holding that the lack of an implied private right of action does not necessarily preclude using regulations to establish the standard of care in a federal common law claim for negligence per se). This approach has been squarely rejected by the Supreme Court in <u>Atherton v. FDIC</u>, 519 U.S. 213, 217-26 (1997), in which the Court declined to develop a federal common law governing the standard of care used to measure the legal propriety of the conduct of the directors of a federally chartered savings and loan. See also <u>O'Melveny & Myers v. FDIC</u>, 512 U.S. 79, 89 (1994). FDIC's reliance on <u>Federal Savings & Loan Insurance Corp. v. Musacchio</u>, 695 F. Supp. 1053, 1064-65 (N.D. Cal. 1988), is likewise misplaced because California's negligence per se scheme differs materially from New Mexico's. See <u>id.</u> (holding that under California law, in which negligence per se is permissive, not mandatory, a negligence per se claim could proceed based on violations of several federal deposit and insurance statutes and regulations); <u>see also</u> <u>RTC v. Dean</u>, 854 F. Supp. 626, 641 (D. Ariz. 1994) (rejecting <u>Musacchio</u> based on the uniqueness of California's negligence per se scheme).

provides for enforcement of those regulations in administrative proceedings brought by

the Federal Home Loan Bank Board ("FHLBB").[5]  Where the legislature has constructed

a regime for enforcement, permitting negligence per se claims to proceed "would be

engrafting an additional remedy the legislature did not provide."  Schwartzman, Inc. v.

Atchison, Topeka & Santa Fe Ry. Co., 857 F. Supp. 838, 850 (D. N.M. 1994); see also

Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 97 (1981) ("The presumption

that a remedy was deliberately omitted from a statute is strongest when [the legislature]

has enacted a comprehensive legislative scheme, including an integrated system of

procedures for enforcement.").

In RTC v. Dean, 854 F. Supp. 626 (D. Ariz. 1994), the court considered whether

violations of the same regulations at issue in this case established a claim for negligence

per se under Arizona state law and concluded, in accordance with other courts, that

violations of those federal regulations cannot establish a claim for negligence per se made

by a conservator of a federally insured, state-chartered savings and loan against the

association's former director.  Id. at 641 (citing other cases dismissing negligence per se

claims under state law based on violations of the federal regulations at issue in this case).

In reaching this conclusion, the court focused on the fact that the regulations at issue do

---

[5]  The Office of Thrift Supervision ("OTS") replaced the FHLBB pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), effective August 9, 1989.  See 12 U.S.C. §§ 1461, 1462a.

not grant a private cause of action to the RTC.[6]  As the Eighth Circuit stated in <u>Federal Savings and Loan Insurance Corp. v. Capozzi</u>, 855 F.2d 1319, 1325 (8th Cir. 1988), <u>vacated on other grounds</u>, 490 U.S. 1062 (1989):

> [We] discern no congressional intent that the broad-based regulatory protections involved here grant a federal cause of action for damages to a federally insured, state-chartered thrift institution against its former directors.  In the context of this type of institution, we believe these regulations are "forward-looking, not retrospective; [they] seek[] to forestall insolvency, not to provide recompense after it has occurred.  In short, there is no basis in the language of [the regulations or promulgating statutes] for inferring that a civil cause of action for damages lay in favor of anyone.  <u>Touche Ross & Co.</u> [v. Ash, 422 U.S. 560, 570-71 (1975)].

Because the regulations FDIC cites do not support a private right of action, FDIC "through its assertions of a state law negligence per se claim . . . is attempting to impose on the defendants a duty unknown in state law." <u>Dean</u>, 854 F. Supp. at 643.

In accordance with the well-reasoned decisions of other courts that have considered whether violations of the regulations cited by FDIC, such as 12 C.F.R. § 543.36(b)(2), can support a state law claim for negligence per se, we conclude that the New Mexico Supreme Court would agree that such regulations do not support a claim of negligence per se under New Mexico law.  Therefore, we hold that the district court did not abuse its discretion in rejecting FDIC's proposed negligence per se instruction.

---

    [6] The instant case is brought by FDIC, the successor to RTC, acting in the same capacity as RTC acted in <u>Dean</u>.

**C**

Under New Mexico law, lenders are prohibited in certain circumstances from making a loan secured by property encumbered by liens. Contending that the district court gave an incorrect instruction on the impact of New Mexico law prohibiting subordinate lien lending with regard to the Omni loan, FDIC relies on N.M. Stat. Ann. § 58-10-39(F),[7] which states in relevant part:

> In no event shall an association make a loan, purchase or sell a note or lien or enter into any participation transaction authorized by the savings and loan Act in violation of any regulation promulgated by the supervisor, and no association shall:
> . . . .
>     F.    [M]ake a real estate loan which is not secured by a first and prior lien upon the property described in the mortgage, deed of trust or other instrument creating or constituting the lien unless every prior lien of record thereon is owned by or subordinated to the association.

FDIC alleged that the Omni loan was secured by a fourth lien. Based on this statute, FDIC proffered the following instruction:

>     Until August of 1986, First American was a state-chartered savings and loan subject to New Mexico law. At the time, New Mexico law prohibited a New Mexico savings and loan from taking anything other than a first lien on any real property securing a loan.
>
>     If you find that . . . Schuchmann[] allowed or caused First American to enter into the Omni Real Estate Investment loan in violation of this law,

---

[7] In its appellate brief, FDIC also relies on N.M. Stat. Ann. § 58-10-36, which we decline to consider because FDIC failed to cite this provision to the district court in support of the proffered instruction. See Bledsoe, 742 F.2d at 1242.

- 15 -

then you must find [him] at fault and liable for any losses resulting from the Omni Real Estate Investment loan.

(I Appellant's App. at 243.) Although the district court adopted the language of the first paragraph, it declined to accept the rest of FDIC's instruction, instead charging the jury:

> However, New Mexico law allowed the savings and loan supervisor to adopt regulations granting state-chartered savings and loan rights, powers, privileges and immunities in addition to those expressly provided by state law and also to grant exceptions to requirements of state law to the extent that those rights, powers, privileges, immunities and exceptions were possessed by federally-chartered institutions. During the time of the transactions at issue in this case, the savings and loan supervisor provided an exception to the requirement of first liens, allowing institutions such as First American to make loans secured by subordinate liens, during the time of the transactions at issue in this case.

(Id. at 426-27.)

The authority of the savings and loan supervisor to adopt regulations derives from N.M. Stat. Ann. § 58-10-50, which provides that "in addition to the rights, powers, privileges, immunities and exceptions provided by the Savings and Loan Act, such additional rights, powers, privileges, immunities and exceptions" may be "grant[ed], extend[ed], and provide[d] for by regulations promulgated by" the savings and loan supervisor, "[n]otwithstanding any other provision of the Savings and Loan Act." One such regulation, in effect during the time of the Omni loan transaction, allowed savings and loan associations to extend a loan secured by encumbered property as long as "the unpaid amount . . . of all recorded loans secured by prior mortgages, liens or other encumbrances on the security property that would have priority over the association's lien

- 16 -

. . . does not exceed the applicable maximum loan-to-value ratio limitations prescribed in [this regulation]." N.M. S&L Reg. 83-6(d)(4).

The district court properly instructed the jury that there was an exception to the first lien requirement. However, because the court did not inform the jury of the conditions of that exception, we simply can not find "upon hearing the instructions, the jury understood the issues to be resolved and its duty to resolve them." Medlock, 164 F.3d at 552 (citing Brodie, 112 F.3d at 442). The trial court's failure to define the exception could only lead the jury to conclude the court had determined the exception to the requirement of first liens was applicable or to speculate as to whether it was. Neither alternative is acceptable. This failure is not harmless because there is insufficient evidence in the record to determine whether the Omni loan met the exception to the first lien rule, i.e., to determine whether the unpaid amount of the loans secured by the previous liens exceeded the applicable maximum loan-to-value ratio limitations. Accordingly, we reverse the district court's judgment with regard to the Omni loan transaction and remand for further proceedings.[8]

---

[8] Wholesale reversal on the Omni loan transaction is necessary because we are unable to speculate as to how a proper instruction would have affected the jury's findings with regard to the issues of gross negligence, breach of fiduciary duties, proximate cause and damages.

## D

The New Mexico Supreme Court has adopted the following formulation of the business judgment rule:

> If in the course of management, directors arrive at a decision, within the corporation's powers (inter vires) [sic] and their authority, for which there is a reasonable basis, and they act in good faith, as the result of their independent discretion and judgment, and uninfluenced by any consideration other than what they honestly believe to be the best interests of the corporation, a court will not interfere with internal management and substitute its judgment for that of the directors to enjoin or set aside the transaction or to surcharge the directors for any resulting loss.

Whites v. Bane Co., 866 P.2d 339, 343 (N.M. 1993) (quoting Dilaconi v. New Cal Corp., 643 P.2d 1234, 1240 (N.M. Ct. App. 1982)) (further citations omitted); see also N.M. Stat. Ann. § 53-11-35(B) (prohibiting imposition of liability on a director who acts "in good faith, in a manner the director believes to be in or not opposed to the best interests of the corporation, and with such care as an ordinarily prudent person would use under similar circumstances in a like position"). Consistent with New Mexico law, the district court instructed the jury that directors must "arrive at their decisions, within the corporation's powers and their authority, with a reasonable basis, and while acting in good faith, as the result of their independent discretion and judgment, and uninfluenced by any consideration other than what they honestly believe to be the best interests of the corporation." (I Appellant's App. at 423.)

Despite the congruence of the instructions and the applicable law, FDIC contends the instructions failed to describe the "exceptions" to the business judgment rule and the

effect of those exceptions on the burden of proof. (Appellant's Br. at 47.) The so-called exceptions identified by the FDIC in its proffered instruction, however, are no more than a negative formulation of the affirmative duties described by the rule. For example, the proffered instructions state that the business judgment rule does not apply if directors "have not acted in good faith," (I Appellant's App. at 249), while the instructions given state that the rule requires directors to "act[] in good faith," (id. at 423). Similarly, contrary to FDIC's assertion, the instructions adequately informed the jury that the business judgment rule does not apply if a conflict of interest tainted the decision in question. The instructions so informed the jury by stating that directors' decisions are to be "uninfluenced by any consideration other than what they honestly believe to be the best interests of the corporation." (Id. at 423.)

The district court instructed the jury that the burden of proof was on plaintiff to prove every element of its case by a preponderance of the evidence. FDIC argues "it is . . . well-established that when the business judgment rule does not apply to a transaction, the burden of proof is on the director 'to show that the action under fire is fair to the corporation.'" (Appellant's Br. at 49 (quoting Gearhart, 741 F.2d at 720).) Appellant does not cite New Mexico case law in support of this purportedly "well-established" burden shifting rule. Moreover, our review of what little New Mexico law exists on the business judgment rule reveals that the burden shifting rule is far from "well-established."

Under these circumstances, we cannot conclude the district court abused its discretion in declining to give a burden-shifting instruction.

**E**

Adverse domination is an equitable theory for tolling the statute of limitations applicable to claims of negligence like those involved in the instant case. The district court instructed the jury as follows:

> In order to prove "adverse domination" the plaintiff must establish that, for a [specified period of time], there was no one with knowledge of facts giving rise to possible liability who could or would have induced First American to bring a lawsuit. To do this the plaintiff must show that the defendant had full, complete, and exclusive control of the institution and negate the possibility that any informed director or shareholder could have induced the corporation to institute a lawsuit.

(I Appellant's App. at 425-26.) FDIC contends the instruction misstates the law because under Farmers & Merchants National Bank v. Bryan, 902 F.2d 1520, 1523 (10th Cir. 1990), a plaintiff "may also demonstrate adverse domination by proving that an informed director, though capable of suing, would not do so." See also FDIC v. Appling, 992 F.2d 1109, 1115 (10th Cir. 1993). Acknowledging that the first sentence of the quoted portion of the instruction permitted the jury to apply the doctrine if it found there was no one "who could have or would have" brought suit, FDIC insists that the failure to include the "would have" element in the second quoted sentence requires reversal.[9]

---

[9] FDIC also contends the district court erred in refusing to provide its tendered instruction informing the jury that negligent acts related to the Custer Road and Omni

(continued...)

- 20 -

In response, Schuchmann contends that state, not federal, principles of equitable tolling apply. Although Bryan, 902 F.2d at 1522, which involved similar claims, held that federal common law governs the question whether a state statute of limitations is equitably tolled, Schuchmann argues that holding is of dubious continuing validity. See FDIC v. Dawson, 4 F.3d 1303, 1307-09 (5th Cir. 1993) (disagreeing with Bryan); see also RTC. v. Scaletty, 891 P.2d 1110, 1114 (Kan. 1995) (holding that "[s]tate law . . . determines when state law claims accrued and whether they expired before the RTC took over."); cf. FDIC v. UMIC, Inc., 136 F.3d 1375, 1380 (10th Cir. 1998) (applying Oklahoma law of equitable tolling to a claim of breach of fiduciary duty brought by FDIC); FDIC v. Regier Carr & Monroe, 996 F.2d 222, 225 (10th Cir. 1993) ("[T]he limitation period of FIRREA may not apply retroactively to revive a claim that is already barred by a state statute of limitations." (citations omitted)).

---

[9](...continued)
transactions occurring within the limitations period—i.e., restructuring and forgiveness—could form an independent basis for liability. Although FDIC asserts it tendered an instruction to that effect, it provides no citation to the record indicating where that instruction can be found. Nor does FDIC cite a single case in support of its position that each act in the course of a single transaction can form an independent basis for a claim of negligence for purposes of accrual of the limitations period. Despite the fact that it is appellant's task to provide citations to the record, we conducted an independent search for the alleged proffered jury instruction to no avail. We therefore do not address this contention. See SEC v. Thomas, 965 F.2d 825, 827 (10th Cir. 1992) (holding that in the absence of essential references to the record in a party's brief, this Court will not "sift through" the record to support claimant's arguments) (citations omitted); Phillips v. Calhoun, 956 F.2d 949, 953 (10th Cir. 1992) (holding that a party must support its argument with legal authority).

We need not, however, resolve the question of whether <u>Bryan</u> remains good law.

Assuming, as FDIC urges, that <u>Bryan</u> sets forth the applicable formulation of the doctrine

of adverse domination, the instructions given accurately informed the jury of the

governing law.  Although the instruction would have better conveyed the <u>Bryan</u> standard

had the second quoted sentence required FDIC to "negate the possibility that any

informed director or shareholder <u>would or</u> could have induced the corporation to institute

a lawsuit," we find that omission inconsequential.  That is because, as noted, the actual

language of the preceding sentence permitted the jury to find adverse domination if no

one "could or would have induced First American to bring a lawsuit."  (I Appellant's

App. at 425-26.)  Moreover, assuming the omission amounts to error, any such error was

harmless given that the jury found Schuchmann's negligent conduct with respect to the

Omni and Custer Road transactions was not the proximate cause of FDIC's injuries.[10]

### III

FDIC also assigns error to a variety of evidentiary rulings.  For the most part, the

presentation of those issues is too deficient to permit review because they are raised in

what can only be described as a haphazard manner.  The first set of excluded documents

purportedly establishes that Cruce helped Schuchmann obtain a loan for the purchase of a

home.  Although FDIC alleges the documents were relevant, and therefore admissible,

---

[10]  The applicability of the doctrine of adverse domination was irrelevant to the Intervest transaction.

because they support its theory that Schuchmann released Cruce from his guarantee on a loan in return for helping with the home loan, it fails to cite a single legal authority supporting its contention. Thus, the argument fails. See Phillips v. Calhoun, 956 F.2d 949, 953 (10th Cir. 1992). Moreover, any purported error is harmless given FDIC's concession that other evidence of the home-loan transaction was introduced at trial. Next, FDIC contends the district court erroneously excluded other documents involving loans made by First American to Cruce and the personal relationships among Neary, Cruce, and Tara Schuchmann. Because FDIC fails to identify where in the record it objected to the district court's ruling excluding that evidence, and because our own review of the record reveals that FDIC did not in fact object to the ruling, we are unable to consider these contentions. See Lopez v. Behles (In re Am. Ready Mix, Inc.), 14 F.3d 1497, 1502 (10th Cir. 1994); see also Fed R. Evid. 103(a)(2); 10th Cir. R. 28.2(C)(3)(a) ("Briefs must cite the precise reference in the record where a required objection was made and ruled on, if the appeal is based on . . . a failure to admit or exclude evidence.").[11] Equally devoid of citation to legal authority is FDIC's contention that the district court erred by denying its motion for directed evidentiary findings as a sanction for Schuchmann's failure to timely disclose requested documents. We again decline to speculate as to the possible legal

---

[11] The record in this case was voluminous and the FDIC has failed more than once in its brief to properly direct us to the relevant portion of the record. It is worth emphasizing that "[j]udges are not like pigs, hunting for truffles buried in briefs." Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995) (further citation omitted).

- 23 -

basis for this assignment of error.  See Phillips, 956 F.2d at 953.  In any event, we find that the district court's response to Schuchmann's failure to timely comply with the court's discovery orders, i.e., an award of costs, attorney's fees and time to redepose Schuchmann, was sufficient.

FDIC does support one of its evidentiary arguments with citations to legal authority—the argument that the district court improperly instructed the jury that it could only consider reports prepared by federal examiners for the limited purpose of showing First American's directors had notice of the regulators' criticisms.  We review evidentiary rulings limiting the scope of the evidence presented only to determine if the trial court abused its discretion.  See Messina v. Kroblin Trans. Sys., Inc., 903 F.2d 1306, 1310 (10th Cir. 1990).  Relying on Bryan, 902 F.2d at 1523-24, FDIC asserts the jury should have been permitted to consider the reports for all purposes, most importantly as substantive evidence of wrongdoing.  In Bryan, we held the district court had properly admitted similar examination reports under the public records exception to the hearsay rule, noting in particular "their probative value on, inter alia, the issue of the outside directors' knowledge."  Id. at 1524.  Given that the limiting instructions in the instant case permitted the jury to consider this evidence for substantially the same purpose, we conclude the district court did not abuse its discretion.

**IV**

The final argument FDIC raises on appeal is that the jury's verdict with respect to breach of fiduciary duty, proximate cause, and adverse domination is against the weight of the evidence. It is well-established that "for a litigant to receive appellate review of a jury verdict for want of sufficient evidence, he must first have moved for a directed verdict before submitting the issue to the jury." Koch v. City of Hutchinson, 814 F.2d 1489, 1496 (10th Cir. 1987); see also Cone v. W. Va. Pulp & Paper Co., 330 U.S. 212, 217 (1947); cf. Fed. R. Civ. P. 50(a) (setting forth the standard for entering judgment as a matter of law prior to submission of the case to the jury). Because FDIC once again fails to cite to the portion of the record containing its Rule 50(a) motion, the issue is waived. See Cone, 330 U.S. at 217; see also 10th Cir. R. 10.3(C)(5); 10th Cir. R. 28.2(C)(3)(c). Moreover, although FDIC has graciously included in the record its motion for a new trial and to alter or amend the judgment, which is based in part on the alleged insufficiency of the evidence, "[a] party may not circumvent Rule 50(a) by raising for the first time in a post-trial motion issues not raised in an earlier motion for directed verdict." United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1228 (10th Cir. 2000) (citing FDIC v. United Pac. Ins. Co., 20 F.3d 1070, 1076 (10th Cir. 1994)). In our own review of the record, we could not find a motion by FDIC for a directed verdict. FDIC's "failure to move for a directed verdict on this issue bars us from considering whether the district court erred in denying" its motion for new trial and to alter or amend the judgment.

<u>Union Pac. Ins. Co.</u>, 20 F.3d at 1076 (citing <u>Trujillo v. Goodman</u>, 825 F.2d 1453, 1455 (10th Cir. 1987)).

**V**

The judgment of the district court is **REVERSED** with regard to the Omni loan transaction.  In all other respects, the district court's judgment is **AFFIRMED**.  We **REMAND** to the district court for proceedings consistent with this opinion.